**Kevin Patrick BRADY, Plaintiff,**

v.

**Patricia D. MARKS, et al., Defendants.**

**No. 98–CV–6196L.**

United States District Court,
W.D. New York.

June 22, 1998.

248

Kevin Patrick Brady, East Rochester, NY, pro se.

### DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

Plaintiff, Kevin Patrick Brady, appearing *pro se*, commenced this action under 42 U.S.C. § 1983, several other federal civil rights statutes, and purportedly under certain federal criminal statutes as well. Plaintiff's claims in this case arise from certain criminal proceedings against him in New York State courts, which stemmed from his alleged violation of a prior Family Court custody order.

On May 15, 1998, relying on this court's power to dismiss a complaint *sua sponte* for failure to state a claim, *see Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir.1994), I ordered plaintiff to show cause in writing why his complaint should not be dismissed for failure to state a claim upon which relief could be granted, since each of the nine defendants appeared to be entitled to absolute immunity from liability with respect to plaintiff's claims. Noting that plaintiff had previously commenced a similar action that was dismissed in part on the ground of absolute judicial immunity, and that plaintiff was subject to a state court order enjoining him from filing any action in any court based on the matters underlying this suit without prior permission from the court, I also ordered

plaintiff to show cause why he should not be permanently enjoined from filing further actions in this court relating to his Family Court proceedings without prior leave of court.

On June 1, 1998, plaintiff filed a motion for summary judgment based on defendants' failure to respond to the complaint. Plaintiff also filed a response to this court's Order to Show Cause on June 4, 1998.

In large part, plaintiff's response to the Order to Show Cause simply echoes the allegations contained in his complaint: that the New York State court system is corrupt, and that the judges, prosecutors, and probation officer involved in the underlying state court proceedings have flouted New York law and the United States Constitution in a systematic effort to deprive plaintiff of his rights, apparently because of their prejudice against fathers involved in custody disputes.

After reviewing the record, I conclude that the complaint is plainly meritless on its face, and that it must be dismissed for failure to state a claim upon which relief can be granted. I also find that plaintiff should be enjoined from filing further actions in this court arising out of his Family Court proceedings, or any criminal or other proceedings stemming from his Family Court action. To explain why, some factual background is necessary.

## FACTUAL BACKGROUND

By virtue of a prior Family Court order, plaintiff has some visitation rights with respect to his daughter, who is in the sole custody of her mother. The incidents that led to plaintiff's arrest occurred when plaintiff arrived at his daughter's house for visitation in March 1996. Apparently there was a confrontation of some sort between plaintiff and John Sober, the girl's maternal grandfather. Someone called the police, and plaintiff was arrested for Harassment in the Second Degree. He was also charged with two counts of Criminal Contempt in the Second Degree based on his alleged violation of the Family Court's custody and visitation order.

Plaintiff was convicted of contempt after a jury trial and sentenced to four months in jail. The conviction was affirmed on appeal, and plaintiff was denied leave to appeal to the Court of Appeals. In this action, plaintiff has sued all of the judges involved in the proceedings, as well as the assistant district attorneys and the employee of the Monroe County Department of Probation who prepared plaintiff's presentencing report.

The gist of plaintiff's claims is that the charges placed against him were improper under the law because he believes that only Family Court had jurisdiction to hear a case based on an alleged violation of a Family Court order of protection. Plaintiff also claims that the order of protection is illegal and that therefore the Family Court judge's refusal to vacate the order violates his constitutional rights. Plaintiff further alleges that Monroe County District Attorney Howard Relin and Rochester City Court Judge John R. Schwartz violated his rights by failing to investigate and prosecute his numerous complaints and allegations of criminal conduct against members of the area judiciary.

Plaintiff seeks a declaratory judgment that the circumstances took place as plaintiff alleges and that he was illegally incarcerated for four months. Plaintiff also seeks an order vacating the order affirming his conviction, or an order directing the State of New York, County of Monroe, to do so. Plaintiff also seeks to enjoin all proceedings by the Perinton Town Court and Monroe County Department of Probation against him and reimbursement of all his legal costs. He states that he leaves any criminal penalties against the defendants to the discretion of the court and the Federal Bureau of Investigation.

## DISCUSSION

### I. Immunity

Plaintiff's claims against all of the defendants are all based on actions that they undertook in the course of each defendant's respective public position. The defendants are the District Attorney, his Assistant District Attorneys, judges of various courts in which his cases have been heard, and the Probation Department employee charged with providing a sentencing report to the

court. For the reasons set forth below, the court finds that all of the defendants are entitled to absolute immunity from liability.

## A. Defendant Judges Kohout, Marks, Ciparik, Klonick and Schwartz

■■■ Plaintiff has brought claims against five judges: Monroe County Family Court Judge Joan S. Kohout, Monroe County Court Judge Patricia Marks, New York State Court of Appeals Judge Carmen Beauchamp Ciparik, Rochester City Court Judge John R. Schwartz, and Perinton Town Court Justice Thomas J. Klonick ("the judicial defendants"). It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.* at 10, 112 S.Ct. at 287, quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). The protection of immunity is not pierced by allegations that the judge acted in bad faith or with malice, *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The United States Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to 42 U.S.C. § 1983. *See Id.* at 547, 87 S.Ct. 1213.

The Supreme Court has developed a two-part test for determining whether a judge is entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 360, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). First, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57, 98 S.Ct. 1099 (emphasis added) (quoting *Bradley*, 80 U.S. (13 Wall.) at 351). Second, a judge is immune only for actions performed in his judi-

cial capacity. *Id.* at 360–63; *see also Maestri v. Jutkofsky*, 860 F.2d 50 (2d Cir.1988) (finding no immunity where town justice issued arrest warrant for conduct which took place neither within nor in a town adjacent to his town, thereby acting in the absence of all jurisdiction), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989); *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir.1974) (finding no immunity where judge assaulted litigant).

*Stump* further distinguished between an "excess of jurisdiction" and "the clear absence of all jurisdiction over the subject matter":

Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

*Stump*, 435 U.S. at 356 n. 6, 98 S.Ct. 1099 (citing *Bradley*, 80 U.S. at 351).

The conduct of the judicial defendants were all clearly undertaken in their judicial capacity. Moreover, plaintiff does not allege that Judges Kohout, Marks, Ciparik and Schwartz acted in "the clear absence of all jurisdiction over the subject matter," and his allegations that they acted in bad faith or with malice does not provide a basis for finding that they are not immune from suit. *See Pierson*, 386 U.S. at 554, 87 S.Ct. 1213. Accordingly, the court finds that defendants Kohout, Marks, Ciparik and Schwartz are absolutely immune from suit by plaintiff.

■■■ Although plaintiff does make the conclusory allegation that Justice Klonick acted without jurisdiction, his allegations in fact demonstrate that Justice Klonick did have jurisdiction over the subject matter before him. The scope of a judge's jurisdiction

"must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356, 98 S.Ct. 1099. A judge will be subject to liability only when "he has acted in the clear absence of all jurisdiction." Plaintiff alleges that he was charged with violations of Penal Law 215.50(3), Criminal Contempt in the second degree, which is a class A misdemeanor. The New York Criminal Procedure Law confers jurisdiction upon local criminal courts over all offenses other than felonies, including misdemeanors. N.Y.Crim. Proc. L. §§ 10.30(1)-(2). As a justice in a local criminal court, Justice Klonick thus did have jurisdiction over the subject matter of plaintiff's case and therefore the court finds that defendant Klonick is absolutely immune from suit by plaintiff.

## B. Defendants District Attorney Relin and ADAs Gregory and Randall

█ In addition to judges, prosecutors performing traditional prosecutorial activities are given absolute immunity in § 1983 suits. *See Imbler v. Pachtman*, 424 U.S. 409, 427–28, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution ..., activities in deciding not to do so ..., and conduct of plea bargaining negotiations...." *Barrett v. United States*, 798 F.2d 565, 571–572 (2d Cir.1986) (citing *Lee v. Willins*, 617 F.2d 320 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980)); *Dacey v. Dorsey*, 568 F.2d 275, 278 (2d Cir.), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir.1981). The conduct of defendants District Attorney Relin and ADAs Gregory and Randall which forms the basis of plaintiff's complaint can fairly be characterized as closely associated with the conduct of litigation or potential litigation and thus provides them with absolute immunity in this matter.

## C. Defendant Turzillo

█ Plaintiff's claim against defendant Turzillo, an employee of the Monroe County Department of Probation, is based solely on his disagreement with the contents of the presentencing report that Turzillo submitted to Justice Klonick. Turzillo is absolutely immune from liability in that regard. *Hili v. Sciarrotta*, 140 F.3d 210, 214 (2nd Cir.1998) ("The requirements of New York law with respect to the preparation and submission of presentence reports, along with the procedural mechanisms protecting the defendant's right not to be punished on the basis of inaccurate information in such a report, persuade us that New York probation officers in preparing and furnishing such reports to the courts, like federal probation officers, are entitled to absolute immunity from suits for damages"). *See also Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir.1988) (per curiam) (finding Louisiana probation officer absolutely immune from claim for damages); *Demoran v. Witt*, 781 F.2d 155, 157–58 (9th Cir. 1985) (same re California probation officer); *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984) (same re Alabama probation officer).

## II. Dismissal Pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)

█ Further, plaintiff's claim against Turzillo, as well as his claims against the other defendants, are barred because plaintiff has failed to demonstrate that the criminal proceedings in question terminated in his favor. Most of the claims concern the criminal proceedings which followed his arrest on March 6, 1995. The essence of plaintiff's claims is that he was the victim of malicious prosecution and improper detainer.

█ In *Heck v. Humphrey*, the United States Supreme Court held that a plaintiff whose criminal conviction has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *id.* at 486–87, 114 S.Ct. 2364, may not seek dam-

ages[1] under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. In so holding, the Supreme Court looked at the essence of a § 1983 claim, which " 'creates a species of tort liability,' " *id.*, at 483, 114 S.Ct. 2364 (citation omitted), and determined that the issue must be analyzed by looking first to the common law of torts, and specifically the tort of malicious prosecution. To prove a malicious prosecution, a plaintiff must demonstrate that the criminal proceeding terminated in his favor.

> This requirement "avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." ...
> Furthermore, "to permit a convicted criminal to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit."

*Id.* at 484, 114 S.Ct. 2364 (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts, § 28:5, p. 24 (1991)).

In fact, plaintiff's criminal conviction has been affirmed by the Monroe County Court, and leave to appeal to the New York State Court of Appeals has twice been denied. Because his conviction has not been invalidated, his claims against defendants Randall, Gregory, Klonick, Marks, Ciparik and Turzillo are barred under *Heck*. Moreover, this court lacks jurisdiction to the extent that plaintiff desires the court to review the state criminal court proceedings or to set aside the state court decision. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–84, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

Plaintiff's other claims are all dependent upon his having a cognizable claim under § 1983. Because *Heck* prevents him from

making such a showing, plaintiff's claims under § 1985 and 18 U.S.C. §§ 241 and 242 must also be dismissed.

Plaintiff also fails to show that the determinations made by Judge Schwartz and Judge Kohout were invalidated or called into question. Accordingly, the court finds that the claims against defendants Schwartz, Kohout and Relin are also barred under *Heck*.

### III. Enjoining Plaintiff from Commencing Future Actions Without Leave of Court

█ In my May 15, 1998 Order to Show Cause, I also directed plaintiff to show cause why he should not be permanently enjoined from filing further actions in this court relating in any way to his Family Court proceedings without prior leave of court. After reviewing plaintiff's response, I conclude that he should be so enjoined.

As noted in my Order to Show Cause, this is the second action that Brady has brought in this court relating to the custody order underlying his arrest. Three of the defendants in the prior action were judges, and I dismissed the claims against them on the ground of absolute judicial immunity. *Brady v. Kearns*, No. 94–CV–6572L, slip op. at 8 (W.D.N.Y. July 18, 1995). I also warned plaintiff that he "must cease his actions in federal court on these claims and others of a similar nature ..." *Id.* at 11.

In spite of that dismissal and warning, plaintiff has again sued several judges based on matters stemming from his Family Court proceedings. His response to the Order to Show Cause also displays no inclination to cease attempting to litigate these state court matters in federal court. I also note that plaintiff commenced a civil rights action in New York State Supreme Court, Monroe County, against several judges and attorneys relating to his Family Court proceedings. On February 29, 1996, Justice Jerome C. Gorski dismissed the complaint and permanently enjoined plaintiff from bringing any further lawsuits "based on the Family Court

---

**1.** This rule was expanded by the Supreme Court to include actions for declaratory judgment as well as money damages in *Edwards v. Balisok*,

520 U.S. 641, 117 S.Ct. 1584, 1585, 137 L.Ed.2d 906 (1997).

matter (or any of its outgrowth, i.e., lawsuits against lawyers, judges, court staff, et al., who has become in any way involved in that Family Court dispute or its progeny) without prior permission to do so from the Presiding or Supervising Judge of that Court or that Judge's designee ..."

■ That a district court has the authority to enjoin a plaintiff who engages in a pattern of vexatious litigation from continuing to do so is "beyond peradventure." *Safir v. United States Lines, Inc.*, 792 F.2d 19, 23 (2d Cir.1986), *cert. denied*, 479 U.S. 1099, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987). "The Supreme Court and numerous courts of appeals have recognized that courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *In re Martin–Trigona*, 9 F.3d 226, 228 (2d Cir. 1993).

The Second Circuit has stated that a

district court, in determining whether or not to restrict a litigant's future access to the courts, should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir*, 792 F.2d at 24.

Having considered these factors in the case at bar, I find that plaintiff should be enjoined from filing any further actions in this court relating in any way to his Family

Court proceedings (including any criminal proceedings stemming from alleged violations of the custody order or other orders of the Family Court) without first obtaining leave of court. Although plaintiff's history of litigation in this court is not especially lengthy, it appears that he has filed at least three civil rights actions here and in state court, all relating in one way or another to his Family Court proceedings. All of those cases have been found meritless. Moreover, given my dismissal of plaintiff's prior action on the ground of judicial immunity, it can hardly be said that plaintiff could have had an objectively reasonable expectation of prevailing in this case.

The vitriolic tone of plaintiff's papers also reinforces a conclusion apparent from the record: that plaintiff is, in his own words, "vehemently *outraged*" over what he is firmly convinced is a monstrous injustice perpetrated upon him years ago in the course of a custody battle, and that he has developed an "obsession" with correcting or avenging that perceived injustice. Plaintiff's Response to Order to Show Cause at 2, 2/28.[2] Plaintiff admits the truth of a statement by defendant Turzillo that plaintiff has been on a "crusade, almost to the exclusion of everything else," to expose defendants' alleged wrongdoing. *Id.* at 2/28. In short, plaintiff himself has answered in the affirmative what the Second Circuit called the "ultimate[ ]" question before me: whether plaintiff is likely to continue to abuse the judicial process and harass other parties. *Safir*, 792 F.2d at 24.

■ In limiting a plaintiff's ability to sue, a court should take care to ensure that the restrictions placed on the plaintiff "are, taken together, not so burdensome as to deny the litigant meaningful access to the courts." *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir.1985) (quoting *In re Green*, 669 F.2d 779, 786 (D.C.Cir.1981)). Courts have therefore developed restrictions that fall short of a blanket prohibition on commencing lawsuits, including "prohibiting the filing of any matters in a designated category, [and] requiring leave of court for future filings." *In re Sas-*

---

**2.** Plaintiff's Response to the Order to Show Cause consists of a three-page cover letter attached to a twenty-eight page response, the pages of which are numbered, "1/28, 2/28," etc. The citation to page 2 is to the cover letter.

*sower,* 20 F.3d 42, 44 (2d Cir.1994) (citations omitted). *See, e.g., Polur v. Raffe,* 912 F.2d 52, 57 (2d Cir.1990) (enjoining plaintiff from filing without leave of court further suits in federal court arising out of dissolution and receivership of certain corporation), 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); *Safir,* 792 F.2d at 25 (modifying district court's injunction to provide that plaintiff was prevented from commencing additional federal court actions relating in any way to defendants' pricing practices or merchant marine subsidies during certain period without first obtaining leave of district court); *In re Martin–Trigona,* 737 F.2d 1254, 1262 (2d Cir. 1984) (describing as "hardly unreasonable" district court's order that, before commencing suit in federal court, plaintiff first inform that court of certain pertinent facts, including the existence of the injunction order, and obtain leave of court to file the action).

Since it appears that plaintiff's litigiousness has so far been limited to matters relating to his Family Court proceedings (which is hardly surprising, given his single-minded fixation on those matters), I conclude that the least restrictive, but effective, means of protecting the courts and defendants from further vexatious litigation by plaintiff would be to enjoin him, as Justice Gorski did, from filing any further actions in this court that relate in any way to his Family Court proceedings, or any of the progeny of those proceedings, without first obtaining prior leave of court. Such an order will not deprive plaintiff of his right of access to the courts, but it will help put an end to what has become a pattern of vexatious and harassing litigation.

■ Several other matters must be addressed. First, plaintiff contends that this court has "dispensed with Federal Rules of Procedure" by *sua sponte* ordering plaintiff to show cause why the complaint should not be dismissed for failure to state a claim. As explained, the authority for the court to do so is ample and long-standing. Plaintiff also alleges that there have been "surrepticious [sic] and exparte communications" between this court and some of the defendants or their attorneys. The apparent basis for this belief is a letter to the court dated May 19,

1998, from Robert M. Place, Esq., who, as town attorney for the Town of Perinton, is responsible for representing Justice Klonick. That letter—a copy of which was sent by Place to plaintiff—merely memorializes a telephone call that Klonick made to my chambers on May 18, to inquire whether Justice Klonick would be in default if he did not respond to the complaint. My law clerk who spoke to Place correctly informed him that because of my Order to Show Cause, he was not required to respond to the complaint at that point. Plaintiff was promptly made aware of this telephone call by Place's May 19 letter, and he suffered no prejudice. There have been no *ex parte* communications concerning the merits of this case between this court and anyone.

■ Plaintiff has also filed what is styled as a motion for summary judgment based on defendants' alleged default. In effect, then, plaintiff is seeking a default judgment under Rule 55 of the Federal Rules of Civil Procedure. As plaintiff recognizes, however, Rule 6(b) permits a court "with or without motion or notice" to extend any time period prescribed by the Rules of Civil Procedure upon a timely request by the party subject to the time period in question. "Neither a formal motion for enlargement nor notice to the adverse party is expressly required by the rule." 4A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1165 at 476 (2d ed.1987) (footnote omitted). Moreover, even an untimely request for an extension of time can be granted where the party's failure to act sooner was due to excusable neglect. Fed.R.Civ.P. 6(b). Given my Order to Show Cause, the whole purpose of which was to avoid unnecessarily burdening defendants with having to respond to what appeared on its face to be a meritless complaint, even had defendants waited until now to request an extension of time, I would grant their request. Plaintiff's motion for a default judgment is therefore denied.

■ One additional matter remains. In a letter to the court dated June 3, 1998, Assistant Attorney General Carlos Rodriguez, Esq., writing on behalf of the state court judges in this action, requested the court to consider imposing sanctions against plaintiff

under Rule 11 of the Federal Rules of Civil Procedure, based on plaintiff's filing of his motion for summary judgment.

Rule 11(b) states in pertinent part that

[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

Rule 11(c) further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."

Although I believe that it would be well within my discretion to impose sanctions now, I decline to do so at this time. As stated, this is the second case of this nature that plaintiff has filed in this court, and some of his claims are of the same type that I rejected in his prior action. In addition, plaintiff's response to Rodriguez's letter was to send the court a letter stating that he intends to move for leave to amend his complaint to add Rodriguez as a defendant in this action.

■ Nevertheless, "the central purpose of Rule 11 is to deter baseless filings in district court . . ." *Cooter & Gell v. Hart-*

*marx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *see also* Notes of Advisory Committee on 1993 amendments to Rules ("the purpose of Rule 11 sanctions is to deter rather than to compensate . . ."). Since my order enjoining plaintiff from filing further actions relating to his Family Court proceedings without prior leave of court should effectively prevent plaintiff from continuing to pursue such baseless claims in this court, additional sanctions, at this time, such as a monetary penalty, should not be necessary. For the second time, however, I strongly warn plaintiff that if he continues to pursue these matters and engage in vexatious and harassing litigation, he will be subject to Rule 11 sanctions. If, despite my injunction, plaintiff attempts to continue to litigate these matters in this court, I will have virtually no choice but to impose sanctions under Rule 11.

### CONCLUSION

Plaintiff's motion for summary judgment (Item 4) is denied, and the complaint is dismissed with prejudice.

IT IS SO ORDERED.