OPINION OF THE COURT
Stuart Namm, J.
In an unprecedented action in the County of Suffolk, the prosecutor, on behalf of the People of the State of New York, requests an order disqualifying or recusing this court from presiding as the assigned Judge of two separate indictments charging the defendant James Diaz with the commission of two counts of burglary in the first degree, assault in the second degree and the unlawful possession of marihuana (indictment No. 1924-85) and assault in the second degree and sexual abuse in the first degree (indictment No. 1103-84).
Citing the provision of Judiciary Law § 14, Code of Judicial Conduct, Canon 3 (C) (a) and Rules of the Chief Administrator of the Courts (22 NYCRR) § 100.3 (c) (i), the prosecutor, pointing to actions taken and rulings by the court as Trial Judge in People v Corso (129 Misc 2d 590) and a previous prosecution of this defendant, unrelated to the instant indict- *1025 merits, both of which resulted in not guilty verdicts by a trial jury, and referring to pronouncements of this court, now claims "that at the very least, the appearance of partiality exists or that a reasonable question exists thereon, to recuse or disqualify [the court] only on these matters, ” and that the People will be deprived of a fair trial if such request is not granted.
The request by the prosecution for recusal of this court is opposed by each of the attorneys who represent the defendant, one of whom argues that if this court were to grant the instant application, "then the continued function of this Court or any other Court in actions involving the Suffolk County District Attorney’s office would be impossible * * * [and] would also result in the de facto impeachment of a duly elected official by the Suffolk County District Attorney’s office”.
The instant application impacts upon the administration of justice and raises serious issues of law, some of which have been addressed previously in this State, and others which are novel and of first impression in this jurisdiction, but which have been considered in Federal courts.
It is beyond dispute that a Judge must be free from all prejudice or bias, actual or implied, and an impartial arbiter of all causes over which he presides. A Judge should disqualify himself from a case
"in which his impartiality might reasonably be questioned
* * * * * *
"he has a personal bias or prejudice concerning a party” (Code of Judicial Conduct, Canon 3 [C] [1] [a]).
At the outset is should be noted, however, that the People emphasize that such recusal is sought "only on these matters” to "insure the integrity of the judicial process.” By so stating, the People implicitly contend that the bias and prejudice of this court is somehow channeled toward the prosecution of this particular defendant.
In affidavits replete with out-of-context quotations, inaccurate quotations and arguments fueled in large measure by newspaper accounts and incomplete transcripts, they raise the serious allegation "that a pattern of conduct of this Court in these cases, as well as in other recent matters, has established a bias or animosity such that this Court’s impartiality might reasonably be questioned.” In support of such application, they cite this court’s decision in the case of People v Corso (129 *1026 Misc 2d 590, supra) dismissing an indictment, after a second Dunaway hearing conducted sua sponte, for the reasons set forth therein, as further evidence of the court’s "prejudice, bias and animus.” Though the Corso decision predated the first Diaz trial, and the preliminary hearings conducted thereon, it was not until after a jury had acquitted James Diaz of all charges including murder in the second degree, and a new indictment was handed up by the Grand Jury charging Diaz with crimes committed while released on bail pending trial of indictment number 1103-84, that the prosecutor sought to have this court recuse itself as the presiding Judge.
It would appear, therefore, that an investigation which has been initiated by the New York State Temporary Commission of Investigations is the impetus for the instant application. In that regard, the prosecutor argues that "this Court should not at the same time be an accuser/complainant in one forum and preside as a judge over proceedings involving the same defendant in another.” However, they provide no evidence, other than a Newsday account, to support the contention that this court is an "accuser.”
Code of Judicial Conduct, Canon 3 (B) (3) provides, in part, as follows: "A judge should take or initiate appropriate disciplinary measures against a * * * lawyer for unprofessional conduct of which the judge may become aware” (emphasis added).
Consequently, this court, as a result of certain prosecutorial and police conduct which it observed during the course of the aforesaid Corso and Diaz trials (supra), and after conclusion of the Diaz trial, requested that Governor Mario Cuomo appoint a special prosecutor to conduct an independent investigation out of "a deep abiding concern for the integrity of the criminal justice system in the County of Suffolk.”*
Code of Judicial Conduct, Canon 1 provides, in part, as follows: "An independent and honorable judiciary is indispensable to justice in our society.”
It was toward that end that such investigation was requested, since it appeared that the independence, honor and integrity of this court was being threatened by conduct both within and without the confines of the courtroom. Nevertheless, any action by the Governor was deferred pending the outcome of the instant investigation which had already been *1027 initiated by the State commission prior to this court’s request, upon its own initiative, and the Governor’s office had been so apprised by counsel to the commission. Suffice it to say, therefore, that this court is neither the accuser nor the complainant in the pending investigation. Even if it were, in view of the conduct which the court observed during the Corso and Diaz trials (supra), this court would be constrained by the Code of Judicial Conduct and its own conscience to take the unpleasant step of requesting such an inquiry. The fact that the instant cases involve the same defendant is of absolutely no import, and cannot form a proper basis for this court’s self-disqualification.
Where the People contend, as they do, that the request for such an investigation places this court in an accusatory posture with respect to the office of the District Attorney of Suffolk County, such contention clearly is misplaced. If that were the case, and it certainly is not, this court should properly recuse itself from presiding over any criminal matter in the County of Suffolk. Obviously, such argument cannot be made with validity; thus, the attempt to focus this court’s alleged bias toward the prosecution of the Diaz indictments.
It is well settled law both in this State and in the Federal courts that in order for bias and prejudice to be disqualifying it " 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case’ ”. (Board of Educ. v Pisa, 55 AD2d 128, 136, citing United States v Crinnell Corp., 384 US 563, 583.) Clearly, although the People "artfully” couch their arguments in the language of "perception of partiality,” they ultimately contend, without providing any concrete basis therefor, that this court is guilty of actual bias, prejudice and animosity with respect to their prosecution of James Diaz. However, if there be any such bias, and there is none, such bias, in order to disqualify the court, would have to result from a source outside of the confines of this court, and not from the conduct which this court observed during the course of its function as a Trial Judge. For the law to be otherwise would be to allow the culprit to benefit from his own wrongdoing.
It is certainly not the intent of the law or the Code of Judicial Conduct to permit a party to engage in conduct "in a course of litigation that might cause any conscientious judge to express, even in caustic terms, his disapproval of it, and thereby put himself in position thereafter to urge successfully *1028 motions to disqualify the judge in his subsequent cases before him.” (United States v Zagari, 419 F Supp 494, 505, citing Davis v Board of School Commrs., 517 F2d 1044.) Parties or lawyers, once embroiled in a self-created controversy with a Judge, "would have a license under which the judge would serve at their will.” (Davis v Board of School Commrs., supra, at p 1050.)
It is important to note at this juncture, however, that while the District Attorney, who is not involved personally in these cases, remains the same, neither pending case is being prosecuted by either of the Assistant District Attorneys who tried Corso or the first Diaz matter (supra). Thus, even if there were such controversy extant between this court and the lawyers involved in those cases, the slate has been wiped clean as to the pending cases. While the prosecution attaches great significance to the fact that this court will no longer conduct "off-the-record” conferences of cases assigned to the major offense bureau in chambers, their concession that they seek to have this court recuse itself only from the Diaz matters, although other major offense cases are pending before it, nullifies the logic of their argument that this court somehow has an animus directed against that particular bureau of the District Attorney’s office. More importantly, this court has the unbridled discretion to conduct its calendar in the best way it sees fit, without having to answer to the prosecutor or the defense Bar. Thus, before this court can be deemed unqualified to preside over these cases, as a matter of law, the People must show personal bias and prejudice on the part of this court against the People of this State in their prosecutions of James Diaz. This they have failed to do. (See, United States v 16,000 Acres of Land, 49 F Supp 645.)
Partiality, or the appearance thereof, in the context of a criminal prosecution, is synonymous with impropriety; and the appearance of impropriety, like beauty, is in the eye of the beholder. Conduct, which one may seek to paint as impropriety, or in this case, partiality, may in fact be propriety, necessitated by the conduct observed within the judicial confines, and this court knows of no cases where a Judge has been disqualified by reason of acts of propriety. The true measure of a Judge’s bias, hostility or prejudice are the decisions which he or she has rendered in regard to the party alleged to be the target of such bias and prejudice and the prosecutor can point to no action taken by this court as a result of same. (See, Matter of Rotwein [Goodman], 291 NY 116, 123; State Div. of *1029 Human Rights v Merchants Mut. Ins. Co., 59 AD2d 1054, 1056.)
Nevertheless, in an effort to demonstrate this court’s alleged bias and hostility against the prosecution of James Diaz, the People, through use of a newspaper account rather than a transcript of the court proceedings, allude to this court’s characterization, out of the presence of the jury, of the People’s witness, Joseph Pistone, as a "pathological liar.” They argue that "[T]here was no basis or discernible purpose for the Court’s public comment in connection with the ongoing trial except that he apparently did not believe this witness”.
Unfortunately, the transcript of the court proceedings does not support the prosecutor’s charge so the same is conveniently discarded. This court conducted two separate hearings concerning the testimony of Joseph Pistone, one during the course of jury selection, and the second during the pendency of the trial, which was necessitated by an alleged jailhouse admission of the defendant which was never offered nor mentioned during the first Cardona hearing. At the conclusion of the first hearing, this court expressed serious reservations about the credibility of the People’s alleged jailhouse informant, Pistone, but permitted his testimony to be heard by the jury, so that they could draw their own conclusion as to his credibility.
It was only after the second hearing in limine that this court characterized Pistone as a "pathological liar.” This comment was made in the course of the court’s ruling that his testimony as to certain events was incredible as a matter of law, especially in light of the fact that there were absolutely no notes of his purported conversations with investigating detectives about these events, although there were notes involving such conversations.
Furthermore, at a time when this court allegedly was harboring bias, hostility and prejudice towards the office of the District Attorney, a motion to suppress an alleged oral confession of the defendant Diaz was denied after a lengthy Huntley hearing. Once again, the facts and the results fly in the face of the logic of the prosecutor’s allegations. Moreover, “inferences drawn from prior judicial determinations are insufficient grounds for recusal because it is the duty of the judge to rule upon issues of fact and law and questions of conduct which happen to form a part of the proceedings before him.” (United States v Partin, 312 F Supp 1355, 1358.) This is especially so, *1030 where the prior rulings, as often as not, favored the party alleged to be aggrieved.
The easiest course of action which this court could take in these matters would be to recuse itself. This court would then be free of the albatross which has weighed heavily upon it for the last several months. Presumably for now, the fires which have been fueled by the charges of animus, hostility, bias and prejudice will be dampened, and the court would be free and unfettered to deal with the many other matters pending before it. As one defense counsel stated in his since withdrawn oral application for recusal: "comments about this case may put undue pressure on any individual, and perhaps on this Court.” Perhaps, another Judge, given the same set of facts and circumstances would opt for recusal and self-disqualification in an effort to avoid an unpleasant confrontation. However, the question of when a Judge should disqualify himself is generally a matter of personal conscience (Castarella v Castarella, 65 AD2d 614), since only the individual judge knows fully his own thoughts and feelings. (United States v Mitchell, 377 F Supp 1312, 1315, affd sub nom. Mitchell v Sirica, 502 F2d 375.) While the option of recusal is indeed a tantalizing morsel available for the taking, this court’s own conscience and sense of justice will not permit the first tempting bite.
The People are certainly entitled to a fair trial and they can rest assured that they will get one by this court. However, the defendant James Diaz is likewise entitled to a fair trial. Due process calls for nothing less. While the prosecutor graciously suggests that these cases be transferred to any other Judge of this court to "insure the integrity of the judicial process,” it is no less judge shopping to improperly, and without legal basis therefor, seek to avoid one judge as it is to seek another.
At another time, in another jurisdiction, another Judge, under similar circumstances, found himself confronted with allegations of prejudice and bias. Then, however, it was the defendants who claimed bias against them and who sought to have the Judge disqualify himself. In refusing to do so, during the historic Watergate trials, Judge John Sirica in the United States District Court, District of Columbia, wrote:
"the Court cannot overlook the fact that it has an obligation to deny insufficient recusal motions. 'There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is.’ * * *
" 'After such study as I could give the matter, I reached the *1031 conclusion that whether a judge should recuse himself in a particular case depends not so much on his personal preference or individual views as it does on the law, and that under the law, I have no choice in this case’ * * * ‘In the absence of a valid legal reason, I have no right to disqualify myself and must sit.’ ” (United States v Mitchell, supra, at pp 1325-1326, quoting from Edwards v United States, 334 F2d 360, 362, n 2, cert denied 379 US 1000; see also, Matter of Natter, 70 Misc 2d 791; Matter of Robin O., 80 Misc 2d 242.)
While the significance of the issues before this court pale by comparison to those which confronted Judge Sirica in Watergate, a criminal case which "has been called one of the most important cases in American judicial history” (Mitchell v Sirica, 502 F2d 375, 376, supra), nonetheless, the principle that a Judge is under an obligation to deny a groundless application for recusal transcends the magnitude of those issues.
Indeed, the very rule cited by the prosecutor as authority for this court’s self-disqualification provides as follows: "A judge before whom a case is moved for trial shall preside at such trial unless he is satisfied * * * that he is unable to serve with complete impartiality, in fact or appearance” (Rules of Sup Ct, App Div, 2d Dept. 22 NYCRR 700.5 [c]; emphasis added).
Under these circumstances, and after careful consideration of the law, and as a matter of personal conscience, this court has no choice but to continue to preside over these trials and to deny the application for recusal. For all of the foregoing reasons, the application is hereby denied and indictment number 1103-84 is scheduled for trial January 27, 1986 at 9:30 a.m., Part VI, before the undersigned.

 The correspondence between this court and the office of the Governor is attached hereto as a sealed exhibit for appeal purposes only.