OPINION OF THE COURT
Arthur W. Lonschein, J.
Since 1976, the plaintiff, Alfred Spremo, Jr., has inundated the courts of this State as well as the Federal courts with a multiplicity of baseless, frivolous, redundant lawsuits against *797 lawyers, Law Guardians, Appellate Division Justices, Supreme Court Justices, Family Court Judges, Assistant Attorneys-General, law secretaries, court personnel and any other individual or entity who might have gotten in the way of the plaintiff or who might have in any way displeased him. These lawsuits have resulted in vexation, harassment and needless expense to the defendants thus sued as well as to the State which is charged with the expense of defending the public officials and have placed an unnecessary burden on the courts and the supporting personnel. This plaintiffs pattern of bringing repetitive, irresponsible and malicious pro se filings constitutes a flagrant and serious abuse of the judicial process and must be stopped.
It appears that Mr. Spremo, at the slightest provocation, begins these lawsuits either under his own name, or by using the name of his son, Alfred John Spremo, as an alter ego. All of these lawsuits, both those brought in plaintiffs name and those brought in the name of his son, are drawn in the handwriting of the plaintiff and in his style of writing. I find that those actions brought in the name of Alfred John Spremo were actually brought by Alfred Spremo, Jr. and as such, is simply the cover for Alfred Spremo, Jr. The same finding was made by Federal District Court Judge Mark Costantino in Alfred John Spremo v Graci and Steiner (ED NY, 85 Civ 3862), that "There is no doubt that the real party instituting the lawsuit is the father Alfred John Spremo, Jr.” In his decision, Judge Costantino permanently enjoined the plaintiff from bringing any more lawsuits against the defendants in that action.
The time has come to consider permanently enjoining the plaintiff from bringing any further actions in the Unified Court System of the State of New York.
In these matters now before the court the defendants have moved to enjoin the plaintiff from bringing any further actions against the defendant lawyers and their client, Michael Dikman, Esq. Mr. Dikman represented Maria Spremo, plaintiff’s wife in a custody dispute involving the custody of Alfred John Spremo, the son. The plaintiff has brought nine separate actions against Mr. Dikman in connection with his representation of Mrs. Spremo, and five separate actions against Mr. Dikman’s lawyers in those lawsuits. The court, sua sponte, enlarged the scope of the application to include all pro se actions in the courts of this State and Mr. Spremo was notified in writing of this action, and thereafter was permitted to be *798 heard in opposition to the same in a proceeding that took two days in open court.
The origin of the present proceedings began in 1975 to 1976 in Family Court, Queens County, in the custody proceeding. An attorney, Joseph Gertler, Esq., was appointed by the court as Law Guardian of the son, Alfred John Spremo. On the court’s order, the child was placed in an institution. The plaintiff, unsuccessful in the custody dispute, sued the Judge, Mr. Dikman, the Law Guardian and the institution. Mr. Spremo then, without authority and without court sanction, removed the boy from the institution. A Family Court Judge ordered plaintiff to return the boy to the institution, which plaintiff failed to do. Mr. Spremo then sued the second Family Court Judge. After a number of appeals to the Appellate Division, that Court in a memorandum decision (Matter of Spremo, NYLJ, June 23, 1977, at 10, col 6) said, "This court will not entertain applications from the movant unless and until he complies with the order of the Family Court, Queens County, dated June 3rd, 1976.” Plaintiff has never complied with that direction.
The plaintiff’s response to the order of the Appellate Division was to bring an action in Federal court against the Justices of the Appellate Division and others, charging a deprivation of his civil rights (Spremo v Dikman, US Dist Ct, ED NY, 78 Civ 1766). It appears from an examination of the plaintiff’s extensive litigation history that whenever he receives an adverse decision from any court, he brings a lawsuit against the Judge who rendered the decision as well as the attorney who represented his opponent. District Judge Neaher in the action against the Appellate Division Justices and others, in ruling against the plaintiff, noted in his decision that Mr. Spremo "seems to be using the Federal court as a sword to protect the enjoyment of the fruits of his contumacious conduct.”
In addition to the 18 Judges and Justices listed above, Mr. Spremo has brought over 13 actions and proceedings against more than 13 Judges and Justices in various courts. They are Federal District Court Judge Mark Costantino, Justices Alfred D. Lerner, Alan Le Vine, Harold Hyman, Angelo Graci, Daniel Joy, Joan Marie Durante, Joseph Rosenzweig, myself, Arthur W. Lonschein of Queens Supreme Court, Isidore Levine, Joseph Torres, David Gilman, and Leo Dikman of Queens Family Court.
*799 He has brought at least five separate actions against Little Flower Children’s Services, the institution to which his son was sent. He has brought four separate actions against Joseph Gertler, Esq., the Law Guardian appointed by the Family Court. He has brought actions against the lawyer who defended Mr. Gertler. He has brought actions against lawyer after lawyer who opposed him in his various lawsuits. Among them are Messrs, and Mesdames Dikman, Botter, Hannafy, Brant, Mallillo, Lassin, McIntyre, Babchik, Zichello, Hertz, Fuerth and Andino. In 1992, having been singularly unsuccessful in Queens County, he has brought two Kings County actions against old enemies: Spremo v Wendy Fleming and Little Flower Children’s Services (index No. 181/92) and Spremo v Hannafy (index No. 181/92). Mr. Hannafy is the attorney for Little Flower Children’s Services.
Mr. Spremo has never been successful to my knowledge in any of the lawsuits he has brought by way of obtaining a decision, verdict or judgment in his favor. All of his actions against public officials resulted in dismissals or were abandoned or discontinued by Mr. Spremo. The complaints brought against public officials sound in exotic and nonexistent causes of action such as "chicanery”, "un-named tort”, "conspiracy”, "violation of civil rights” and the like. Typical of his activities is an action he brought against Justice Joseph Rosenzweig, Supreme Court, Queens County, in September 1991 in which he sought damages of $50,000 against the Judge in a cause of action labeled "un-named tort.” After the Attorney-General appeared for Justice Rosenzweig, Mr. Spremo wrote the Attorney-General in a letter stating "Plaintiff has decided to discontinue the herein action and this notice can be considered the instrument effecting such. The plaintiff anticipates and believes that it would be in the interests of justice that the defendant does not in the future, preside in any action wherein plaintiff or his family might become a party.” (Emphasis added.) Aside from his presumptuousness in advising a Supreme Court Justice as to the law, the plaintiff, as in almost everything else he does as a pro se litigant, is incorrect in his interpretation of the law. A Judge has an obligation not to recuse himself or herself, even if sued in connection with his or her duties, unless he or she is satisfied that he or she is unable to serve with complete impartiality, in fact or appearance. A litigant cannot be allowed to create a sham controversy by suing a Judge without justification, and to then use that sham as a means for achieving the Judge’s recusal. To *800 hold otherwise would be to give such a litigant "a license under which the judge would serve at their will.” (Davis v Board of School Commrs., 517 F2d 1044, cited in People v Diaz, 130 Misc 2d 1024; United States v Grismore, 564 F2d 929.) A motion for recusal is addressed to the conscience of the court (People v Smith, 63 NY2d 41) and in the absence of ill will to a litigant, a Judge has an affirmative duty not to recuse himself, but to preside over the case. (People v Diaz, supra; United States v Mitchell, 377 F Supp 1312, upon writ of mandamus sub nom. Mitchell v Sirica, 502 F2d 375 [the Watergate case].) Since only the individual Judge knows fully his or her own thoughts or feelings, the question of when a Judge must disqualify him or herself is generally a matter of personal conscience. (Casterella v Casterella, 65 AD2d 614.) Thus the matter of the Judge’s disqualification is not for Mr. Spremo, but for the Judge to determine.
Another scenario crafted by Mr. Spremo could serve as the basis for a comedy show if it were not such a waste of time, judicial resources and expense to the State and the parties. This involved an instance where Mr. Spremo actually hired a lawyer, who achieved a good result. Mr. Spremo then fired him and ended up suing his lawyer, the Judge in the case, the Administrative Judge of the court in which the Judge sat, the defendant’s lawyer, the insurance company that provided the defendant’s lawyer, and the court officers of the court where he brought his action.
In that matter Mr. Spremo complained that his mother slammed a door on his finger causing him injury. He retained an attorney, Byron Lassin, Esq., who brought an action in Mr. Spremo’s behalf against his mother. An attorney, John Brant, Esq., was retained by his mother’s insurance carrier General Accident Insurance Co. Mr. Brant appeared for his mother, after which Mr. Lassin settled with the carrier. A dispute arose between Mr. Spremo and Mr. Lassin with respect to the terms of the legal fee, whereupon Mr. Spremo discharged Mr. Lassin and demanded that the carrier forward the settlement proceeds directly to him. This the carrier refused to do, whereupon Mr. Spremo brought an action against the carrier and two separate actions against Mr. Brant, his mother’s attorney, one action in State court, the other in Federal court. The attorney’s fee action was settled before another Justice who Mr. Spremo previously sued charging that Justice with "chicanery” and the matters against Mr. Brant and General Accident were dismissed by me as having no merit. Thereaf *801 ter, Mr. Spremo brought an action against me sounding in "tort, with causes of action for un-named tort, obstructing justice and intentional tort.” After the Attorney-General appeared for me and made a demand pursuant to CPLR 3012 (b) that a complaint be served on that office as my attorney, Mr. Spremo rejected and returned that demand on the ground that his service of the summons on me was defective! In attempting to serve me in the courthouse, he was escorted from the building by court officers and thereafter brought a separate action against me (later withdrawn) and Justice Alfred Lerner and the court officers involved on the ground that there was a policy in Queens Supreme Court which prohibited service of process upon Judges. There is no such policy; I accepted his service (defective though it was), appeared in the first action which was then discontinued by Mr. Spremo. The Federal action against me was also discontinued and the action against Justice Lerner and the court officers was dismissed by Federal District Judge Jack Weinstein.
Mr. Spremo’s relentless vendetta against Judges is underscored by his latest barrage of lawsuits against the judiciary. After I had reserved decision in this matter, Mr. Spremo commenced two separate CPLR article 78 proceedings against three of the Justices of this court. In a proceeding against Justice Daniel Joy, in which he seeks certain injunctive relief, he made racial accusations against Justice Joy’s principal law clerk. He also seeks article 78 relief against Justice Angelo Graci. These matters are sub judice in the Appellate Division, Second Department, and I make no comment on their merits. The article 78 proceeding he brought against me after I reserved decision on this application seeks, inter alla, to have me removed from this proceeding.
Again, after I had reserved decision on the motion, and after he had been given additional time to submit additional argument, Mr. Spremo obtained approval of two separate applications for poor person relief, so as to bring yet two more actions against Mr. Dikman. These applications were made without notifying me, and without notifying the assigned Justice of the pendency of this motion, or that a hearing had been held, or that I had reserved decision.
Perhaps the first question to be considered is the authority of this court to consider sua sponte whether the plaintiff should be enjoined from bringing other actions not connected with the matter at bar. The defendants moved only to enjoin plaintiff from bringing subsequent actions against them and *802 their client. It was the court that enlarged the application to include all subsequent actions in any court in the State against any prospective defendant. In Seibert v City of New York (118 AD2d 845) the Appellate Division, in dealing with litigious plaintiffs, answered the question by sua sponte enjoining those litigious plaintiffs from bringing further proceedings saying, "On the court’s own motion, the plaintiffs are hereby enjoined from instituting any further actions or proceedings in the courts of this State” in relation to the matter then at bar "and any matter related thereto.” (Supra, at 846.)
Ordinarily the right to represent oneself in both civil and criminal matters is basic to our system of justice. Section 6 of article I of the New York State Constitution gives a person accused of a crime the right to "appear and defend in person” in "any trial in any court.” A party can both prosecute and defend civil actions in person. (CPLR 321 [a].)
The right of access to the courts, however, is neither absolute nor unconditional. (In re Green, 669 F2d 779 [DC Cir 1981].) Further, the right to appear pro se is not unlimited. (Muka v New York State Bar Assn., 120 Misc 2d 897; Muka v Hancock, Estabrook, Ryan, Shove & Hust, 120 Misc 2d 146; Matter of Winters v Gould, 143 Misc 2d 44.) In Muka v New York State Bar Assn, (supra) Mrs. Muka alleged that the State Bar conspired with Richard J. Bartlett, the City of Binghamton, the County of Chemung, Louis Greenblott, J. Clarence Herlihy, the Ithaca Teachers Association, Harold E. Koreman, A. Franklin Mahoney, Gerald Stern, the Cornell Law School, Joseph W. Bellacosa, the United States, Paul J. Yesawich Jr., the Appellate Division, Third Department, Hugh L. Carey, the New York State Court of Appeals, the State of New York, the New York State Commission on Judicial Conduct, Howard G. Munson, D. Bruce Crew, Robert E. Fischer, Richard F. Kuhnen, David F. Lee, Jr., Frederick B. Bryant, and Howard A. Zeller, the last six being Supreme Court Justices in the Sixth Judicial District. Previously, she had sued over 100 other defendants in various actions against the "Supreme Court of the State of New York, its judges, law clerks, employees and staff, as officials and private individuals.” The court noted that it was Mrs. Muka’s habit to sue, attack as incompetent, or call for the removal of any Judge who did not render a decision to her liking. In enjoining Mrs. Muka from commencing further pro se lawsuits, the court said that a court has the duty and power to protect courts, citizens and opposing parties from the deleterious impact of repetitive pro se litigation. In bringing *803 these types of actions such a litigant deprives other litigants of their proper share of judicial resources.
Many courts have found it necessary to enjoin pro se litigants from commencing or continuing any further actions when it was found those litigants were abusing the judicial process. "The fact that one appears pro se is not a license to abuse the process of the Court and to use it without restraint as a weapon of harassment and libelous bombardment * * * when it becomes clear that the courts are being used as a vehicle of harassment by a 'knowledgeable and articulate experienced pro se litigant’ * * * the issuance of an injunction is warranted.” (Kane v City of New York, 468 F Supp 586, 590-592 [SD NY 1979], affd 614 F2d 1288 [2d Cir 1979]; see also, In re Martin-Trigona, 737 F2d 1254 [2d Cir 1984], after remand 592 F Supp 1566 [D Conn 1984], affd 763 F2d 140 [2d Cir 1985], cert denied 474 US 1061 [1986].)
In People v Spencer (185 Colo 377, 382, 524 P2d 1084, 1087) the pro se plaintiff responsible for the "Cornucopia” of litigation was enjoined from proceeding pro se, being described by the court as the "master of the summons, the architect of the complaint and the trier of none.” Such a description aptly fits Mr. Spremo. Other pro se litigants were barred in Colorado’s highest court from bringing pro se proceedings (People v Dunlap, 623 P2d 408 [Colo]; Board of County Commr. v Barday, 197 Colo 519, 594 P2d 1057).
When pro se litigants have abused the judicial process, New York courts have limited the scope of their right to appear pro se in civil actions. In Matter of Rappaport (109 Misc 2d 640), a litigant’s disruptive courtroom practices caused the court to revoke his right to appear pro se. In Martin-Trigona v Capital Cities/ABC (145 Misc 2d 405) an abusive pro se litigant was enjoined from commencing or continuing any actions in the New York State courts on a pro se basis.
In Sassower v Signorelli (99 AD2d 358 [2d Dept 1984]) the Second Department held that in light of plaintiff’s palpable abuse of judicial process, it was well within the judicial discretion of the IAS court to enjoin plaintiff from pursuing additional litigation against defendants and related parties in the absence of judicial approval. The "court will not tolerate the use of the legal system as a tool of harassment.” (Supra, at 359.)
Further, the Sassower Court noted "[A] litigious plaintiff pressing a frivolous claim can be extremely costly to the defen *804 dont and can waste an inordinate amount of court time, time that this court and the trial courts can ill afford to lose * * * Thus, when, as here, a litigant is abusing the judicial process by hagriding individuals solely out of ill will or spite, equity may enjoin such vexatious litigation.” (Supra, at 359.)
Courts of other States faced with abusive pro se plaintiffs have enjoined such litigants (Eddy ex rel. Pfeifer v Christian Science Bd. of Directors, 62 Ill App 3d 918, 379 NE2d 653; Eismann v Miller, 101 Idaho 692, 619 P2d 1145).
Accordingly, it is ordered that Alfred Spremo, Jr. himself and using the name of Alfred John Spremo is henceforth hereby enjoined and prohibited from instituting any further actions and proceedings in any court in the Unified Court System in the State of New York. This injunction includes the courts in all of the counties of this State, and includes the Small Claims Part of the Civil Court of the City of New York. Any violation of this order will result in service upon Mr. Spremo of an order to show cause issued by the court for him to show cause why he should not be adjudicated and punished for criminal contempt pursuant to section 750 et seq. of the Judiciary Law. If so adjudicated, the court will consider the maximum penalty provided by law.
The only exception to this order is that the plaintiff has leave to request in any legal fashion, a higher court to review by appeal or otherwise this determination as a pro se litigant. I do not prohibit the plaintiff from using the Federal court since I have no power to do so. I do not prohibit the plaintiff from defending, pro se, any action or proceeding brought against him. This injunction only prohibits him from instituting pro se actions and proceedings. Nor do I prohibit the plaintiff from instituting or continuing any action or proceeding with an attorney representing him. It is not my intention to exclude the plaintiff from his right to use the courts to air his grievances but rather to limit that right as aforesaid. An attorney representing him as an officer of the court would be bound by the Code of Professional Responsibility. He would be required to represent his client zealously, but within the bounds of the law. (Code of Professional Responsibility Canon 7.) He would not "[f]ile a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.” (Code of Professional Responsibility DR 7-102 [A] [1] *805 [22 NYCRR 1200.33 (a) (1)].) Violations of the code could readily be curbed by appropriate sanctions.
All matters involving Michael Dikman, Esq. including Spremo v Dikman (index No. 2065/88) and his law firm wherein Alfred Spremo, Jr. or Alfred John Spremo are plaintiffs which are now pending are dismissed. All matters involving the law firm of Bergadano, Zichello & Babchik, Esqs., and any individual member of the firm wherein Alfred Spremo, Jr. or Alfred John Spremo are plaintiffs are dismissed.