2011 VT 10

## Robert E. Zorn v. S. Scott Smith

[19 A.3d 112]

No. 09-035

Present: **Dooley, Johnson and Burgess, JJ., and Crawford, Supr. J. and Cook, D.J. (Ret.), Specially Assigned**

Opinion Filed February 4, 2011

*Robert E. Zorn*, Pro Se, Middletown Springs, Plaintiff-Appellant.

*S. Scott Smith*, Pro Se, Rutland, Defendant-Appellee.

¶ 1. **Burgess, J.** Plaintiff Robert E. Zorn appeals pro se from an order prohibiting him from filing any additional documents with the Rutland Superior Court clerk except through a licensed attorney. We affirm the trial court's order except in two respects. First, the order is clarified to limit its pleading restriction to this particular case and, second, the order is modified to permit Zorn to demonstrate financial inability, if any, to comply with the order.

¶ 2. This case began in September 2000, when Zorn, then represented by counsel, sued defendant Smith for legal malpractice. It was alleged that he paid Smith a retainer and Smith agreed to file a complaint on Zorn's behalf in a defective-automobile case. Smith told Zorn that the complaint had been filed when in fact it had not, and due to Smith's inaction, the statute of limitations ran on the claim. Zorn moved for summary judgment on his malpractice claim, which Smith did not oppose. The court thus granted summary judgment to Zorn and in an August 2001 order it awarded him $26,108.00, plus interest.

¶ 3. In January 2002, Zorn entered a pro se notice of appearance and filed a motion for trustee process, seeking to collect the

judgment from Smith. See V.R.C.P. 4.2. Smith did not appear at a hearing scheduled on the motion, but agreed in late January to respond to post-judgment interrogatories. The court scheduled an April 2002 hearing on Zorn's motion for financial disclosure. Smith again failed to appear, and a warrant issued for his arrest. Served with the warrant, Smith personally appeared before the court to state that he had not received notice of the hearing and had not received any interrogatories from Zorn. The court vacated the warrant. At a subsequent hearing on April 23, 2002, the parties agreed that Smith would submit a payment plan or respond to the financial discovery requests within thirty days. There is no evidence that Smith honored this agreement.

¶ 4. No action appears in the case over the next four years until October 2006, when Zorn requested and ultimately obtained a writ of execution on the judgment. The writ was served on Smith in January 2007, and returned with a payment of $50, leaving an outstanding balance, including interest, of $43,448.22. In September 2007, Zorn filed a motion for criminal contempt, alleging that Smith had failed to make any payments toward the debt or disclose financial documents as ordered. The court denied the motion, explaining that only civil contempt was available to Zorn under the rules.

¶ 5. Zorn filed another motion for contempt in March 2008, as well as a motion for renewal of judgment and an "ancillary amended complaint" naming the trial judge as a defendant. In May 2008, Zorn filed a "motion for summary judgment." The motions were largely incomprehensible. The motion for contempt, for example, stated that: "since the boycotting of Smith the defendant is under larceny by extortion Model Penal Code 223.4 as well as the court's failure to find that Smith was in his official capacity in part at the time of the fraud." The court noted, correctly, that there was no legal basis for amending complaints and moving for summary judgment six to seven years after final judgment had been entered in the case. The filings are replete with claims that Smith engaged in conspiracy, racketeering, and organized crime, and that the trial judge was complicit in such acts.

¶ 6. Treating the "amended complaint" as a motion to disqualify the trial judge, she referred the matter to the administrative judge. See V.R.C.P. 40(e). Disqualification was denied in September 2008. In the meantime, in June and September 2008, Zorn

filed more papers with the superior court about complaints made to the FBI and IRS over the court's denial of his motions, claiming the court's actions were unconstitutional, conspiratorial, and treasonous. What the court was expected to do with these filings was not clear, except that Zorn sought "revestment" of his judgment order. Also in September 2008, Zorn filed another motion for summary judgment "pursuant to new facts," but reflecting old history and requesting no relief actionable under law. The court found none of the filings warranted by the rules.

¶ 7. Shortly thereafter, Zorn filed a "motion in opposition" to the administrative judge's order and a motion for "entry by default for summary judgment." These requests were denied. In December 2008, Zorn filed a document entitled "Motion to compel summary judgment by violation of the State of Vermont and or officials as judges to violate higher Court orders and Supreme Court orders." Zorn also sought an interlocutory appeal, which was denied.

¶ 8. In January 2009, the court issued two orders. One denied Zorn's contempt motion for discovery violations for lack of any underlying orders or requests for discovery. The second denied Zorn's renewal-of-judgment motion for lack of a new and necessary complaint on the debt, but outlined the method by which Zorn could refresh his judgment against Smith.

¶ 9. In a separate order, the court directed Mr. Zorn to show cause, in five pages or less, why he should not be sanctioned under Vermont Rule of Civil Procedure 11(c) for filing five motions between March 2008 and September 2008 lacking legal and evidentiary support. The procedural and substantive deficiencies in these filings were spelled out. Instead of addressing the court's order, Zorn submitted another lengthy filing expressing frustration with the court's failure to enforce the arrest warrant vacated seven years earlier, and reiterating his allegations of "extortion," "racketeering," and a "fully orchestrated conspiracy" between Smith and the judges.

¶ 10. In its subsequent January 2009 order, the court sanctioned Zorn under Rule 11 for violating the rules' pleading and procedural requirements. Continuous dealing with Zorn's repetitive and unwarranted motions, the court reasoned, would undermine its allocation of resources to promote the interest of justice for all litigants. The court concluded that the conduct described in its

earlier order violated Rule 11(b)(2) and (b)(3) and that sanctions should be imposed.

¶ 11. Turning to an appropriate sanction, the court recognized that its order must be "limited to what is sufficient to deter repetition of such conduct." V.R.C.P. 11(c)(2). It expressly sought to deter future repetitive and unwarranted filings, while allowing Zorn court access. Based on these considerations, the court directed that the Rutland Superior Court clerk "refuse to accept for filing any future pleading, petition, complaint, motion, letter, or other document from Mr. Zorn unless signed by an attorney licensed to practice in the State of Vermont in accordance with Rule 11." The court explained that its sanction would help ensure prospective compliance with the requirements of Rule 11(b) and deter repetitive filings, while permitting access to the court. This appeal followed.

¶ 12. Zorn's submissions on appeal largely mirror his filings below. There are extensive allegations of misconduct by the judges who have dealt with this and his other cases. The briefing is generally difficult to follow, as in the following statement of the case:

> The Rutland County Superior Judge Teachout, has a continuous prejudice of against plaintiff appellant, uncontested by her outrages, acts of difiance [sic] of the rights to join the partys [sic], herself, and the judges, in which she states the plaintiff appellant is frustrated by her actions, which is total destruction of the due process rights of the contract rights of mandate rule . . . .

Nevertheless, we infer a challenge to the court's imposition of its sanction under Rule 11(c), and address that issue. See *Beyel v. Degan*, 142 Vt. 617, 619, 458 A.2d 1137, 1138 (1983) (mindful of appellant's pro se status, the Court reluctantly addresses issues apparently raised on appeal, notwithstanding appellant's failure to comply with appellate rules on adequate briefing).

¶ 13. We affirm the trial court's decision as fully within its discretion, see *State v. Delaney*, 157 Vt. 247, 256, 598 A.2d 138, 143 (1991) (Supreme Court reviews decision to impose sanctions under Rule 11 for abuse of discretion), except in two particulars. First, absent finding a broader pattern of pleading misconduct beyond this case, the sanction needs to be limited to this case and matters properly arising within this case only. Second, the sanc-

tion as issued would preclude Zorn from even a cogent claim of indigence, so it must be modified to allow Zorn the opportunity to assert and demonstrate, pro se, that he is without the resources to comply with the court's order.

¶ 14. Otherwise, the trial court's process was authorized. Under Rule 11, any document submitted to the court is certified to present allegations supported by evidence and legal contentions warranted by law. V.R.C.P. 11(b)(2), (3). Upon belief that these requirements have been violated, the court may issue an order describing the specific conduct in question and direct a party to show cause why no violation should be found. V.R.C.P. 11(c)(1)(B). After considering the party's response, the court may impose a sanction that is "limited to what is sufficient to deter repetition of such conduct." V.R.C.P. 11(c)(2). The superior court followed this procedure.

¶ 15. Sanction by the court was warranted under the rule. The court identified five filings that plainly violated Rule 11. The filings were repetitive and unsupported by fact or law. These findings are not discernibly challenged on appeal. In response to the show cause order, Zorn relied on no law or rule to justify his submissions, but instead offered more of the same mere allegations of conspiracy between defendant and virtually every member of the judiciary coming into contact with this or other cases involving him. Presented with just another violation of the sort cited in its show cause order, the court acted within its authority to find that these repeated, unsupported, and largely indecipherable filings earned a sanction under Rule 11(c).

¶ 16. The question of how best to cure such misbehavior posed a challenge. As the court recognized, this case implicates the litigant's access to the courts as well as the judiciary's interest in avoiding diversion of its resources to process pointless papers at the expense of time and justice due other litigants. The right of access to justice is fundamental in our state constitution. See Vt. Const. ch. I, art. 4 (stating that "[e]very person within this state ought to find a certain remedy [for injury], by having recourse to the laws" and that "every person ought to obtain right and justice, freely, and without being obliged to purchase it"); *Jacobsen v. Garzo*, 149 Vt. 205, 208, 542 A.2d 265, 267 (1988). This right is not unlimited, however, and litigants are not "free to abuse the courts by inundating them with frivolous suits which

burden the administration of the courts for no useful purpose." *In re Lawsuits of Carter*, 510 S.E.2d 91, 93 (Ga. Ct. App. 1998); see also *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 3 (1992) (per curiam) (imposing sanction where petitioner's filings for certiorari review had a deleterious effect on the Court's fair allocation of judicial resources).

 ¶ 17. Limits and burdens on judicial resources are not academic. Our courts are closed one day per month due to extreme fiscal pressure — only recently reduced from one and one-half days' closure. Rule 11 affords the trial court the necessary means to avoid being held hostage by paperwork from vexatious litigants. See, e.g., *In re McDonald*, 489 U.S. 180, 184 (1989) (recognizing that courts have responsibility to ensure that their "resources are allocated in a way that promotes the interests of justice"). No litigant enjoys a constitutional right to delay justice to others and occupy the court's time with unfounded filings. Others litigating in good faith are entitled to justice in the courts "promptly and without delay." Vt. Const. ch. I, art. 4; see, e.g., *Peterson v. State*, 817 So. 2d 838, 840 (Fla. 2002) (explaining that to further right of every citizen to have access to the courts, courts must sometimes "limit the filings of individuals who have deluged the Clerk's office with incomprehensible correspondence, and filed multiple frivolous petitions" (quotation omitted)).

 ¶ 18. The sanction imposed here was supported and reasonable under the circumstances, when limited to this case and provided that Zorn has the opportunity to prove a lack of means necessary to comply with the court's order. Essentially, the superior court enjoined Zorn from appearing pro se. The Second Circuit offers a useful summary of factors employed by courts in judging whether a prefiling injunction against a litigant is warranted:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel;

and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). The ultimate question is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.* The *Safir* analysis strikes an appropriate balance between a litigant's right of access to the courts and the court's need to protect itself as an institution and other parties from the waste of judicial resources.

¶ 19. Applying the *Safir* factors, we conclude the court acted within its discretion in restricting, while not barring, Zorn from filing additional materials in this case. The recent history of this litigation reflects a pattern of chronic vexatious, baseless, and frivolous filings. The superior court's conclusions that Zorn's claims are fantastic and without any good faith basis are supported by the content of the filings and is not challenged in any substantive manner by Zorn. The court's conclusion that his filings present an undue burden on the court is evident insofar that limited judicial resources devoted to Zorn's filings are wasted and distract from the administration of justice due others. Similarly, this conclusion is not challenged in any particular on appeal. Limits in this case present no "diminution of our support for the principle of free access to the courts," but are properly viewed as furthering the right of access by permitting courts "to devote our finite resources to the consideration of legitimate claims of persons who have not abused the process." *Attwood v. Singletary*, 661 So. 2d 1216, 1217 (Fla. 1995); see also *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990) ("Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.").

¶ 20. The reasonable expectation of the trial court, given Zorn's habit, was that Zorn would continue to file unreasonable and wasteful motions, demands, and papers. Baseless submissions were, at this point, serial. Zorn ignored instructions offered by the trial court on how to pursue collection on his judgment according to law. When told what was wrong with his previous submissions, and in the face of an order to show cause why he should not be sanctioned for repeatedly filing papers in violation of the rules, Zorn violated the rules again.

¶ 21. Zorn's persistent disregard may stem from frustration with the court in collecting what he is owed. Even so, whatever impediments Zorn has to abiding by the rules do not require that the judiciary and the public simply accommodate his violations. After demonstrating his commitment to violating Rule 11, Zorn earned a Rule 11 sanction. See *Urban v. United Nations*, 768 F.2d 1497, 1499 (D.C. Cir. 1985) (per curiam) (finding that litigant's numerous allegations lacked even an arguable basis in law and fact and justified sanctions); *Miles v. Angelone*, 483 F. Supp. 2d 491, 496 (E.D. Va. 2007) (mem.) (upholding sanctions where petitioner continued to reassert claims that the state committed fraud, his claims had been rejected repeatedly, and the court could determine no "good-faith basis for his continuing to pursue these matters").

¶ 22. Zorn is not assisted by counsel, and although pro se litigants receive some leeway from the courts, they are still "bound by the ordinary rules of civil procedure." *Vahlteich v. Knott*, 139 Vt. 588, 591, 433 A.2d 287, 288 (1981). These include the obligations of Rule 11 and sanctions for noncompliance. See *Pandozy v. Segan*, 518 F. Supp. 2d 550, 558 (S.D.N.Y. 2007) (stating that the "special solicitude that a pro se plaintiff must face does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." (quotation omitted)). Zorn's pro se status is but one factor to consider in deciding whether and how to sanction a litigant; it is no passport to waste the court's time indefinitely.

¶ 23. Mindful that "broad filing restrictions against *pro se* plaintiffs should be approached with particular caution," *Cok v. Family Court of Rhode Island*, 985 F.2d 32, 35 (1st Cir. 1993) (quotation omitted), we are satisfied, except in the two respects previously noted and discussed further below, that the superior court's order here is measured and the least restrictive answer to the reasonably anticipated ongoing violation of the rules by Zorn if left to his own devices. See *De Long*, 912 F.2d at 1149 (stating that "orders restricting a person's access to the courts must be based on adequate justification supported in the record and narrowly tailored to address the abuse perceived"); *Cok v. Read*, 770 A.2d 441, 444 (R.I. 2001) (recognizing that to preserve resources, courts may place "reasonable limits on the filings of

litigants who abuse the judicial system" but that "such a sanction should be drawn narrowly" so as not to "impermissibly infringe upon a litigator's right of access to the courts" (quotation omitted)). Zorn's access to justice is preserved, while the court's resources are not occupied by deciphering papers to no useful purpose. Zorn proffers no less restrictive and effective solution.

¶ 24. The dissent contends that lesser sanctions, like fines or preapproval of Zorn's motions, should be exhausted before resorting to the trial court's bar of further filings without a lawyer. Less restrictive measures might be appropriate in a different case, but the record of waste and recalcitrance here supports the conclusion that lesser sanctions would likely be futile. Moreover, monetary penalties or judicial previews would mean more, rather than less, judicial investment in wasteful filings. Fines would necessitate hearings on ability to pay and willfulness. Preapproval requires additional court time devoted to evaluating, again, the substance of filings. Neither of these options would advance the litigation, and, given Zorn's pattern of unsubstantiated filings, both would result in further waste. The lesser sanction of preapproval was imposed on Zorn in another case, as pointed out by the dissent, *post*, ¶ 30, but to no lasting effect in this matter. Choosing, instead, what it perceived to be a more effective approach was no abuse of discretion by the trial court.

¶ 25. Nor, as characterized by the dissent, is the imposition of a lawyer an abdication of the court's screening function — especially in this case, where the court repeatedly screened Zorn's pro se submissions and determined them baseless. Courts rely daily on attorneys to file pleadings and papers that are not entirely wasteful of courts' time. Attorneys are obligated not only under Rule 11, but by their licensure as well, to assure that their submissions meet minimum standards of substance. See V.R.Pr.C. 3.1 (prohibiting unfounded and frivolous claims or defenses); *id.* 8.4(d) (defining professional misconduct to include "conduct that is prejudicial to the administration of justice"). Given Zorn's continuing violations, it was not unreasonable for the court to interpose a lawyer's certification between Zorn and the court's mail slot.

¶ 26. As previously noted, however, applying the sanction to "any pleading, complaint, motion, letter or other document" in Rutland Superior Court as currently set forth in the order is overbroad. There are no findings below of similar abuses by Zorn

in other litigation. On this record, it is not evident that his frustration in this case is, or would be, so expressed in others. Accordingly, the sanction is revised to apply only to this case and any derivatives raising the same claims. In other words, only matters stemming from the original *Zorn v. S. Scott Smith* litigation, which were raised or could have been raised in the past, are subject to this sanction.

¶ 27. Should Zorn's violation of the rules become evident in other cases, the superior court can extend its sanction as appropriate.

¶ 28. The sanction also requires revision to permit Zorn, pro se, to assert and prove that he is without the means to retain an attorney as necessary to comply with the order. If indigent or without viable resources, the sanction as written would deny Zorn access to justice. Zorn is in the best position to know and marshal the evidence of his means and efforts to secure legal assistance. It is left to Zorn to move for reconsideration on those grounds, should he be inclined to do so.

*The trial court's decision is affirmed, as modified to explicitly limit its application to this case and to allow Zorn the opportunity to move for reconsideration due to inability to afford counsel.*

¶ 29. **Dooley, J.,** dissenting. No lawyer in the State of Vermont has the obligation to ensure that this plaintiff, or any other person, obtains access to the courts for purposes of presenting a meritorious or arguably meritorious case. Lawyers are private actors who extend, or refuse to extend, legal services based on many considerations, including economic reward and ability to get along with the client. Even lawyers in publicly-funded agencies created to extend legal services to the indigent have the ability to refuse to accept prospective clients for reasons not based on the merits of the client's case. The sanction in this case, even as diluted by the majority, fundamentally transfers the responsibility of the Vermont Judiciary to provide "right and justice" to "every person" to private actors who do not have to honor the constitutional mandate and against whom plaintiff has no remedy if they fail to assist plaintiff's access to the courts. See Vt. Const. ch. I, art. 4. As the initial decision in *Procup v. Strickland*, 760 F.2d 1107, 1110 (11th Cir. 1985), observed, the restrictive injunction used in this case "is an ominous abandonment of judicial responsibility, the import of which far exceeds the actual abuse attrib-

utable even to the exceptional [pro se] litigant." The sanction can be, and will be, the functional equivalent to a prohibition of the use of the courts within its terms, a clear violation of Article 4. This is the fundamental reason for this dissent.

¶ 30. The majority upholds the restrictive injunction because "the superior court's order here is measured and the *least* restrictive answer to the reasonably anticipated ongoing violation of the rules by [plaintiff] if left to his own devices." *Ante*, ¶ 23 (emphasis added). In fact, the injunction issued here is the *most* restrictive sanction possible exactly because it limits plaintiff's access to the courts with no judicial review. In facing what it deemed similar circumstances involving litigation by this plaintiff, the United States District Court for the District of Vermont imposed a less restrictive sanction of requiring judicial approval of plaintiff's filings before they are accepted. See *Zorn v. Brown*, File No. 1:05-CV-297 (D. Vt. Nov. 30, 2005) (doc. 50). Exactly because that sanction involves court review of plaintiff's filings to ensure they are not frivolous or otherwise unmeritorious, it is significantly less restrictive than the one imposed in this case. The Eleventh Circuit rejected the sanction of requiring lawyer representation as a prerequisite to future filings because it unduly burdened litigants' access to the courts.[1] See *Procup v. Strickland*,

---

[1] I recognize that some courts have upheld prefiling restrictions of this type, although generally on records more extreme than the one before us. See *People v. Spencer*, 524 P.2d 1084, 1086-87 (Colo. 1974); *Attwood v. Eighth Circuit Court*, 667 So. 2d 356, 357 (Fla. Dist. Ct. App. 1995) (per curiam) (upholding injunction against further pro se filings as necessary due to litigant's daily incomprehensible and frivolous filings); *Spremo v. Babchik*, 589 N.Y.S.2d 1019, 1023-24 (Sup. Ct. 1992) (holding that the right of access is not unlimited and must bend when litigant's repetitive and frivolous filings "deprives other litigants of their proper share of judicial resources"). Apart from the differences in the controlling facts, these decisions differ in two respects. First, several are based on the reasoning that the judiciary can control the conduct of lawyers, but not pro se litigants, so that the proper remedy must involve the presence of a lawyer. See *Spremo*, 589 N.Y.S.2d at 1025. The 1984 amendment to Rule 11, which made self-represented litigants subject to the rule and imposed the same standards of conduct on them as on lawyers, was intended to respond to this perceived limitation. See Reporter's Notes — 1984 Amendment, V.R.C.P. 11. Both the 1984 and 1996 amendments to the rule made the sanctions more flexible and meaningful. See *id.*; Reporter's Notes — 1996 Amendment, V.R.C.P. 11. The strengthening of Rule 11 weakened this justification for requiring the appearance of a lawyer as a sanction. Second, courts imposing a required-lawyer sanction do not generally adhere to the policy that any sanction must be the least restrictive possible. Some say so explicitly. See

792 F.2d 1069, 1074 (11th Cir. 1986) (per curiam) (en banc); *Procup*, 760 F.2d at 1116.

¶ 31. While the foregoing paragraphs represent the fundamental reason for my disagreement with the majority decision, it is not the only reason. I agree that plaintiff's actions warrant a sanction for violation of Rule 11. I also agree that under the *Safir* factors the case has reached the point where a restrictive injunction may be necessary. See *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). In my judgment, however, sanctions should occur earlier and escalate to a restrictive injunction only if lesser sanctions fail. I think this point is particularly appropriate in this very unusual case.

¶ 32. In stating my disagreement, I start with the fundamental principles that have to govern our actions. Vermont Rule of Civil Procedure 11(c)(2) authorizes a sanction for violation of its requirements but limits the sanction "to *what is sufficient to deter repetition* of such conduct." (Emphasis added.) This means that the court must chose a sanction that is the "least restrictive, but effective, means of protecting the courts." *Brady v. Marks*, 7 F. Supp. 2d 247, 255 (W.D.N.Y. 1998). Restricting a litigant's access to the courts is a particularly severe remedy that must be used rarely and with great caution. See *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) ("Such a drastic remedy must be used sparingly, . . . consistent with constitutional guarantees of due process of law and access to the courts."). This is especially true when, as here, the litigant proceeds pro se. *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980) (explaining that "use of [prefiling injunction] against a *pro se* plaintiff should be approached with particular caution" and should "remain very much the exception to the general rule of free access to the courts"). Generally, a court should start with a less restrictive sanction and escalate its sanction response only once those other methods are proven ineffective. See *Freeze v. Griffith*, 849 F.2d 172, 176 (5th Cir. 1988) (assessing costs against pro se plaintiff for filing frivolous repetitive appeals and warning that "further frivolous appeals will result in escalating sanctions").

---

*State ex rel. Bardacke v. Welsh*, 698 P.2d 462, 467 (N.M. Ct. App. 1985) (explaining that "less restrictive method of regulating access is not required when the facts show a pattern of conduct which is either vexatious, oppressive or for the purpose of harassment"). Even as recognized by the majority, Vermont law requires that a sanction be "the least restrictive" means available. See *ante*, ¶ 23.

¶ 33. Because it presents circumstances rarely, if ever, present in cases involving sanctions for frivolous filings, this is a very unusual case in three ways. First, it started as a clearly meritorious case. Plaintiff obtained a judgment against a lawyer for malpractice and proceeded to try to enforce it. While plaintiff's pro se maneuvering was ineffective and counterproductive, and the judgment may have become stale, this was not a frivolous case against the original defendant, S. Scott Smith.

¶ 34. Second, plaintiff has been a frequent, and often successful, pro se litigant in the Vermont courts. Plaintiff here instigated fourteen other cases, filed during the period from July 1989 through July 2005.[2] In all but one of these cases, plaintiff appeared pro se. In eight of the fourteen cases, he won a favorable judgment, usually for a relatively small monetary amount. He prevailed in one of two cases brought as small claims.

¶ 35. Third, plaintiff has not appeared in forma pauperis in this or any of the other cases. He has paid considerable money in filing fees over the years and continues to pay those fees. Thus, there is every indication that he is capable of paying a monetary sanction, but that form of sanction was never imposed upon him.

¶ 36. In a fourth way, the case is not unusual. Plaintiff's filings have become more and more incoherent and erratic in recent years. This is not the only case in which such behavior has occurred. As a consequence, the same trial judge issued a similar order against plaintiff in another case. *Zorn v. Ryan*, No. 327-7-05 Wrcv (Vt. Super. Ct. Oct. 6, 2008). In a nonprecedential order, a

---

[2] This information comes from Vermont Courts On-Line which has docket sheets for civil and small claims cases filed in twelve of the fourteen superior courts in Vermont. This information is publicly accessible from the Vermont Courts On-Line website. See https://secure.vermont.gov/vtcdas/user. A number of decisions have held that a trial court must gather this kind of information before issuing a restrictive filing injunction of the type before us now, see, e.g., *Jordan v. State*, 110 P.3d 30, 43 (Nev. 2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008), but the superior court never did so. Although the issue arose in an adversary proceeding, defendant did not offer any substantive argument regarding the injunction, and therefore the parties have not provided this Court with the relevant information. In these circumstances, the trial court and this Court must be free to go to the public records to determine the issue.

The court's order in this case precedes court unification in Vermont that eliminated the district and family courts so at the time the superior court's jurisdiction was over only civil and small claims cases. Therefore, I interpret the order on appeal as covering only these case types and have looked only at them.

three-justice panel of this Court upheld the order, in part because plaintiff did not explicitly challenge it. *Zorn v. Ryan*, No. 2008-445 (Vt. April 15, 2009) (unpub. mem.), available at http://www.vermontjudiciary.org/d-upeo/eo08-445.pdf.

¶ 37. Finally, I think we also have to acknowledge a fifth factor because it is obvious although unstated by the trial court or by the majority. Whenever someone has tried to help plaintiff, that person has ended up as the latest defendant in plaintiff's latest amended complaint. For example, Superior Judge Harold Eaton, when reviewing a recusal motion against a trial judge in this case, went out of his way to explain exactly what plaintiff should do to enforce his judgment. Plaintiff never acted on the advice but added Judge Eaton to the list of alleged conspirators against plaintiff. In these circumstances, no lawyer is likely to step forward to represent plaintiff.[3] The order the majority affirms, even as modified, is thus de facto a prohibition on any further filings in this case, which is impermissible. See *Peoples v. State*, 531 So. 2d 323, 326 (Ala. Crim. App. 1988) (concluding that an order that prohibited filing any motion or pleading in three cases was overbroad and remanding for a less-restrictive sanction); *Holt v. State*, 232 P.3d 848, 855 (Kan. 2010) ("Blanket prohibitions, however, would deny a party's future access to the courts and constitute an over extension of the inherent authority."); *Switzer v. Switzer*, 641 S.E.2d 80, 84 (Va. 2007) ("[A]ppellate courts generally are in agreement that courts may not completely prohibit future pro se filings by litigants who have filed repeated frivolous cases or motions."). The superior court stated in its decision that the sanction would "help to ensure prospective compliance with the requirements of Rule 11(b) and deter repetitive filings, while permitting Mr. Zorn continued access to the courts." I do not think that the last phrase of that rationale can be squared with the reality of the circumstances before us.

¶ 38. This point puts ¶ 24 of the majority decision in perspective. In essence, the majority is saying that no alternative sanction is appropriate because the alternatives do not make plaintiff go

---

[3] This Court referred plaintiff to Vermont Legal Aid, Inc. and requested the Vermont Volunteer Lawyers Project (VVLP) to find a volunteer lawyer to represent plaintiff in this Court. VVLP was unable to find a pro bono lawyer who would take the case. This Court was not informed of the result of the referral to Vermont Legal Aid, but no lawyer from that program entered an appearance for plaintiff.

away, never to be seen (at least by the judge) again. Thus, the court says a filing preapproval requirement is inappropriate because it "requires additional court time devoted to evaluating, again, the substance of filings." *Ante*, ¶ 24. Under this philosophy the most restrictive possible sanction becomes the least restrictive possible sanction because the sanction must ensure that the trial judge never has to see the pro se litigant again and has no responsibility for whether the litigant has access to justice for a meritorious claim. In my judgment, this is a fundamental abandonment of judicial responsibility that cannot be squared with plaintiff's constitutional right of access to the courts in Chapter I, Article 4 of the Vermont Constitution.

¶ 39. The majority claims that the sanction is not unduly restrictive because courts "rely daily on attorneys to file pleadings and papers that are not entirely wasteful of courts' time." *Ante*, ¶ 25. The truth of this statement does little to alleviate my concerns. While lawyers are certainly obligated to ensure that any filing they make is not frivolous, there is no reverse obligation. That is, lawyers are not required to file everything that is nonfrivolous. The fact remains that plaintiff may have a legitimate complaint, but be unable to find an attorney to represent his interests, and therefore his access to the courts will be denied.

¶ 40. In this case, the superior court did not act when plaintiff started to commence frivolous filings and finally acted to employ the most restrictive sanction possible with no consideration of a less restrictive sanction. I recognize that these five considerations make this a hard case, perhaps the textbook case on the pitfalls of dealing with pro se litigants. But several other options were available to the court, particularly if the court had acted earlier. The en banc decision in *Procup* contains a summary description of the types of sanctions that have been employed by courts in circumstances comparable to those present here.[4] See *Procup*, 792 F.2d at 1072-73. The most common sanction for a violation of Rule 11 is monetary. Rule 11(c)(2) specifically authorizes the court to order the offending party "to pay a penalty into court." Especially early in the escalation of plaintiff's filings, it is possible that a monetary sanction would have deterred plaintiff's conduct. See

---

[4] *Procup* involves cases filed by prisoners so its facts are significantly different from those in this case. Nevertheless, the policy issues and the application of the proper policy are the same.

*Golyar v. McCausland*, 738 F. Supp. 1090, 1098 (W.D. Mich. 1990) (imposing monetary sanction against pro se plaintiff for filing repetitive frivolous law suit). For example, the court could have required plaintiff to pay escalating monetary sanctions as a condition of further filings. As long as plaintiff had the ability to pay those amounts, such a sanction would be far less restrictive than that ultimately imposed.

¶ 41. As an alternative, the court could have imposed a leave-to-file requirement on plaintiff. *Procup*, 792 F.2d at 1073 (listing as a sanction option having the court review pleadings prior to filing). As noted above, the United States District Court for the District of Vermont sanctioned plaintiff in this manner in a different case by restricting him from filing new cases or pleadings in cases without prior approval of the court. See *Zorn v. Brown*, File No. 1:05-CV-297 (D. Vt. Nov. 30, 2005) (doc. 50). There is no good reason why such a sanction could not have been used here. The majority's conclusion that such lesser sanctions would have been "futile" is nothing more than conjecture. *Ante*, ¶ 24. Rather than speculate on the outcome, especially about a right as important as access to the courts, plaintiff is entitled to an opportunity to demonstrate compliance. Further, I am not persuaded by the majority's assessment that preapproval is not an option because of the drain on judicial resources. I cannot believe that a summary review of plaintiff's attempted filings to ensure there is a new and arguably meritorious claim contained therein is such a drain on judicial resources that it will interfere with the processing of other cases in the court.

¶ 42. In sum, I dissent because the sanction upheld, even as narrowed by the majority, is the most restrictive sanction a court can impose short of an outright prohibition on future access to the court and in this case is de facto such a prohibition. It is inconsistent with the right of access for all litigants contained in Chapter I, Article 4 of the Vermont Constitution. It was imposed with no consideration of less restrictive alternatives, and less restrictive alternatives exist in this case. I would reverse and remand for consideration of those alternatives.

¶ 43. I am authorized to state that Justice Johnson joins this dissent.