NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 27

No. 2021-095

| | |
|---|---|
| Alexandra Fox | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Family Division |
| | |
| Nathan Fox | November Term, 2021 |

David Barra, J.

Antonietta A. Girardi of Facey Goss & McPhee P.C., Rutland, for Plaintiff-Appellee.

Nathan Fox, Pro Se, Poultney, Defendant-Appellant.

PRESENT: Eaton, Carroll and Cohen, JJ., and Treadwell, Supr. J., and Dooley, J. (Ret.), Specially Assigned

¶ 1. **COHEN, J.** Father appeals a sanctions order imposed by the family division enjoining him from submitting filings in this case unless the filing is signed by a licensed attorney or he first obtains permission from the court. We affirm the sanction but remand to the family division to provide additional guidance regarding the procedure and standards for father's future filings.

¶ 2. The sanction on appeal follows a long procedural history. Because the amount and content of father's filings are important to the legal analysis, they are outlined in detail. As explained more fully below, the court acted within its discretion in sanctioning father given his pattern of filing numerous motions that lacked factual or legal support, failing to adhere to procedural rules, and acting without good faith. We conclude, however, that the court's order was

overly broad in scope because it applies to all of father's submissions to the court in this matter and does not clearly provide father with instructions on how to comply. Therefore, we remand for the court to amend its sanctions decision accordingly.

## I. Procedural History

¶ 3. Mother and father married in 2014 and have one child together, a daughter born in 2016. They divorced in 2018, by which time mother and daughter had been living in Vermont for over a year. At that time, father was on active military duty and stationed in Florida. In the final divorce order based on the parties' stipulation, mother was awarded sole physical and legal parental rights and responsibilities (PRR) for daughter, subject to father's right to parent-child contact (PCC) and mother's duty to keep father informed as to legal decisions made for daughter. The decree provided father with the right to overnight visitation when he traveled to Vermont and permitted father to pay for daughter to travel to Florida for long weekends. The parents agreed to alternate holidays with daughter. In 2019, father left the military and relocated to New York state. He began to seek increased visitation time with daughter.

¶ 4. Over the next several years, father and mother engaged in constant litigation related to PRR, PCC, and child support. Mother had counsel throughout the process, and father represented himself. Father regularly filed multiple motions in a short timeframe. For example, he filed three motions on December 3, 2019, four motions on February 21, 2020, and four motions in the span of three days in March 2020. A pattern emerged in father's filings: they were numerous, duplicative, lacked factual or legal support, did not conform to procedural rules, and appeared to be made without good faith. The family division and court personnel repeatedly explained to father how to file properly, but he either did not respond or refused to follow the correct procedure. Many times during the litigation, mother alleged that father was abusing the court process and continuously failed to properly serve mother when he filed motions with the court; on more than one occasion, she sought sanctions against him. The following provides a chronological sampling

2

of father's behavior throughout the underlying litigation. Although most of the chronology relates to the PCC and PRR litigation, father engaged in the same behavior regarding the parties' child-support litigation, including making multiple requests that were without merit and not in conformance with procedural rules.

¶ 5.     The family division held a hearing in May 2020 to consider a multitude of motions and rule on the parties' contradictory factual assertions, including father's allegations that he was being denied all visitation. In its order later that month, the court concluded that the evidence and best-interests-of-the-child factors from 15 V.S.A. § 665(b) supported sole legal and physical custody remaining with mother. The May 2020 order created a new schedule for PCC contact that allowed father to have visits with daughter every other weekend, provided each parent with the right for daily fifteen-minute calls whenever daughter was with the other parent, and required each parent to inform the other whenever they took daughter outside of their home state or changed their contact information or residence.[1]

¶ 6.     In August 2020, mother filed a motion for contempt and enforcement of the May 2020 order, alleging that father had violated the order by failing to inform her that his address had changed. She also alleged that father repeatedly refused to inform her where his visitation with daughter was occurring. As a result, mother asked the court to find father in contempt of the order and to enforce the order by suspending PCC until father demonstrated strict compliance with the order. The family division ordered father to respond within fourteen days, but he did not do so. The court temporarily granted mother's motion on September 14, 2020, suspending father's PCC until a hearing could be held and stating that the motion to suspend PCC and the motion for contempt would be heard together.

---

[1] In the period between the hearing and the court's decision, mother filed an emergency motion for an interim order in which she requested the family division to ask father to "cease and desist filing further specious motion[s]" or, in the alternative, to suspend PCC until the court could make a final determination on the issue of PCC. This motion was not addressed in the May 2020 order, which made a final determination on the parties' dispute over PCC.

¶ 7.     Over the next month, father filed at least seven motions.  He filed a motion for extension of time, which was granted.  He filed motions to clarify, for additional extension of time, to expedite, to modify the temporary PCC order, and "to cease child abuse," all of which the court denied on the merits or as moot.  He also filed a substantive motion addressing mother's factual assertions, to which the family division responded that father could attend and present arguments at the evidentiary hearing on October 14.

¶ 8.     Mother responded to father's motion to expedite the hearing, alleging that father's motions and claims amounted to harassment.  That same day, mother also filed a motion for contempt, asking the family division to further limit PCC to address mother's concerns about father allegedly violating the court's order suspending PCC.  Separately, mother responded to another of father's motions, denying father's allegations, suggesting the family division order a mental examination of father pursuant to Rule 5 of the Vermont Rules for Family Proceedings, and noting that father continuously failed to follow the relevant procedural rules when filing documents with the court.

¶ 9.     The family division held a two-hour hearing on October 14, 2020, during which it heard testimony and took the matter of mother's motions to enforce and for contempt under advisement.  The family division then issued an order stating that the temporary suspension of father's in-person contact with daughter would remain in place and asking the parties to provide arguments regarding a specific evidentiary question.

¶ 10.    Father filed two motions a few days after the hearing, one of which included an asserted timeline of events but failed to make any legal arguments.  The other was a motion to clarify that asserted the family division had failed to explain why it suspended his visitation.  The family division denied both motions, determining that the first motion did not clearly seek any form of relief and the motion to clarify did not actually ask the court to clarify any existing order.  Father also filed a one-page motion in late October, essentially asking the court to update him on

4

the matter. On October 30, the family division issued an order restoring father's PCC and denying mother's motions for contempt and to enforce because mother failed to prove by clear and convincing evidence that father had acted in contempt of the May 2020 order.

¶ 11. In the interim, mother filed a petition for relief from abuse (RFA) in mid-October, alleging that father had stalked her and daughter. After a contested hearing before a different judge, the family division granted the RFA petition on October 30, finding that father had stalked mother and ordering father not to contact mother directly or indirectly for one year, except that father could call daughter as allowed by the custody order. Subsequently, mother filed a motion asking the family division to include daughter's identifying information in the RFA order, and an emergency motion to resolve the apparent conflict between the court's RFA order and its order restoring father's PCC. The family division clarified that although its October 2020 PCC order restored the May 2020 order giving father the right to visitation, the October 2020 RFA order temporarily limited father's contact with daughter to calls rather than in-person visits. The family division also determined that an evidentiary hearing was necessary to resolve mother's motion to clarify the RFA order, as well as mother's motion for contempt of the May 2020 order.

¶ 12. The family division scheduled a hearing for December 7. Between the family division's October 2020 order restoring father's PCC and the December 2020 hearing, father filed five additional, largely duplicative motions, including a motion for emergency hearing, motion to clarify, motion for emergent clarification, "emergency motion—answers now," and emergency motion for contempt, enforcement, and a hearing. He referred to the family division as the "Dishonorable Court," alleged that court employees did not treat him professionally, and made several personal comments about the judge, the judge's family, and the judge's work schedule. On November 25, the family division acknowledged father's repeated motions in an entry order. The court determined that the motions did not assert grounds sufficient for being heard on an emergency basis and stated that they would be considered at the December 7 hearing.

5

¶ 13.    The family division issued another entry order on December 3, clarifying the issues that would be heard on December 7.  In this order, the family division noted that the May 2020 final order had not been appealed and was therefore final and binding.  The court also indicated that the only remaining issue to be resolved was how to facilitate father's contact with daughter without violating the RFA's restriction against contact with mother.  A few days later, on December 6, father filed a motion for contempt and the family division responded by noting that father had failed to provide proof of service pursuant to Vermont Rule of Civil Procedure 5.  The court ordered father to provide a certificate of service within ten days or the motion would be denied.

¶ 14.    After the December 7 hearing concluded, the family division issued an entry order clarifying father's visitation with daughter.  The order required father to provide mother with a telephone without video capability for him to have a daily call with daughter and for visitation exchanges to occur at the Castleton Police Department.  It otherwise maintained in effect the October 2020 RFA order and the May 2020 final order.  The court also noted that many of the motions for contempt, to enforce, and to modify filed over the previous months did not comply with the applicable rules of procedure, and it ordered father to file a motion within ten days, consistent with those rules, specifying what relief he still sought.

¶ 15.    On December 9, father sent an email to the Rutland Judiciary email address stating, "Consider this my certificate of service IRT [the December 4 motion for contempt] and the Entry Order just received today dated 12/6/20.  Will the court now consider my motion?"  Father forwarded this email to mother's attorney.  Father also attempted to provide mother with a video-capable phone, but her attorney refused it.  That same day, father filed a motion to compel and emailed it to the family division and mother's attorney in an attempt to serve the attorney.

¶ 16.    The following day, father filed a document entitled "motion for appeal."  The filing asked "to appeal the decision to take [his] scheduled rotating visitation from 15 Sep 2020- 20 OCT

6

2020" but did not identify which order father sought to appeal. By letter, court staff informed father on the same day that his appeal was incorrectly filed and that he must file the appropriate form, filing fee of $295, and certificate of service to mother. The court also noted that father's motion would be dismissed if this did not occur within a month.[2]

¶ 17. Mother filed a motion for relief from judgment on December 16, asking the family division to revise a paragraph from its December 7 entry order that seemed to mistakenly attribute the motions that lacked compliance with the Vermont Rules of Civil Procedure to both parties rather than solely to father. On December 17, father filed another motion claiming mother was in contempt of the May 2020 final order and asking the court to modify the December 7 order. He requested the court modify the order to temporarily provide him with full custody, to require mother to undergo a psychological examination due to his allegation that mother and maternal grandmother suffered from mental-health issues and were abusing prescription medications, and to order mother to undergo a hair test to assess drug use. The court acknowledged both parties' filings in a December 17 entry order, in which the court set expectations for the timing of responses and reiterated that father's December 10 motion for appeal was improperly filed without the appropriate appeal form and filing fee. Father did not respond to mother's motion for relief from judgment, and on January 4, 2021, the court granted mother's motion in part, confirming that the sentence in question applied solely to father's motions but declining to revise and re-enter the December 7, 2020, order.

¶ 18. In the interim, on December 18, mother moved to further restrict father's contact with daughter, arguing that father's harassing behavior was a real, substantial, and unanticipated

---

[2] It does not appear that the superior court sent this appeal to the Vermont Supreme Court. A notice of appeal should always be sent to this Court, even if the appropriate filing fee has not been paid. V.R.A.P. 3(b)(1). Likewise, the family division's denials of father's December 9 and February 24 motions to appeal likely did not follow proper procedure. Infra, ¶¶ 20, 22. Regarding interlocutory appeals, a party in a civil action must seek permission to appeal from the trial court pursuant to V.R.A.P. 5(b). However, it does not appear that the family division treated father's December 9 motion as a motion for interlocutory appeal.

7

change of circumstances pursuant to 15 V.S.A. § 668(a) and therefore warranted modifying PCC. Mother asserted that modifying PCC was in daughter's best interests pursuant to 15 V.S.A. § 665(b) and requested attorney's fees for the costs of the motion on the basis that father was engaging in vexatious litigation in an effort to stalk and abuse mother. Father did not respond.

¶ 19. The court granted mother's motion to modify PCC and motion for attorney's fees on January 8, 2021, noting that father's behavior made communication "dangerous and difficult, if not impossible." The court found that "[f]ather has routinely and with increasing frequency and virulence, violated the orders of this court and behaved in an erratic and abusive manner to those around him" and that his abuse of mother "has negatively impacted [daughter]." It also acknowledged that father had been arrested twice in two weeks due to conduct related to the ongoing litigation: once for allegedly violating the RFA order and another time for allegedly engaging in disorderly conduct related to calling the Vermont State Police. As a result, the court modified PCC, finding that father's escalating behavior constituted a real, substantial, and unanticipated change in circumstances under 15 V.S.A. § 668(a) and that modifying PCC was in daughter's best interests under the nine factors listed in 15 V.S.A. § 665(b). The court ordered father to obtain mother's prior written permission before taking daughter from Vermont, limited phone contact between father and daughter to a nightly phone call between 5:30 and 6:00 p.m. for a maximum of fifteen minutes on a phone without video-call capacity, clarified that communications between mother and father were not required if they violated any terms of the RFA order, and required all in-person visits between father and daughter to be supervised by someone approved by mother and to be limited to specific days and times. The family division also granted mother attorney's fees in connection with the filing of her motion to modify because it found that father's actions were not taken in good faith, and it asked mother to file an affidavit regarding her attorney's fees related to the motion.

¶ 20.   Shortly afterwards, in two separate entry orders on January 11, 2021, the family division denied father's motion for contempt from December 17, denied father's motion to compel mother to accept the video-capable phone from December 9 as moot, and denied father's December 9 motion to appeal because he failed to file the appropriate forms and fee despite being directed to do so by the family division in its December 17 order.

¶ 21.   Mother filed the attorney's fees affidavit on January 12.  Father filed a motion on January 25 contesting the family division's grant of mother's request for attorney's fees and asking the family division to consider the fact that mother chose to hire an attorney and father chose to represent himself.  On January 27, the family division granted mother $1155 in attorney's fees pursuant to its January 11 decision.  The family division determined that father's motion did not raise any issues appropriate for a hearing because the motion belatedly discussed the merits of the motion for attorney's fees, which had already been granted in the court's January 11 decision.

¶ 22.   On February 11, father submitted an emergency motion for hearing, in which he made a variety of factual assertions alleging both mother and the family division committed deception and misconduct, and he expressed dissatisfaction with the existing PCC schedule.  He submitted a duplicate copy of the motion two days later.  The family division sent a letter to father stating that he must first file a motion to modify PRR and PCC, as well as submit the filing fee.  Father also attempted to appeal the October 2020 RFA order in mid-to-late February, but he did not submit the filing fee.  The family division later denied father's motion to appeal the RFA order on February 24, noting that the time for appeal had passed.

¶ 23.   Meanwhile, on February 21, father emailed the family division asking for the dismissal of all associated filing fees due to the Judiciary's emergency administrative order addressing the COVID-19 pandemic.  A magistrate judge responded on February 22, denying father's motion to waive all filing fees because the continuation of the administrative order did not constitute a sufficient basis for a fee waiver.  The judge informed father that he could apply to

waive the filing fee and attached the application form. The family division subsequently also denied father's motion to waive all filing fees on February 24.

¶ 24. On February 23, mother filed an opposition to father's motions, noting that father had submitted four motions in ten days via email (the emergency motion for hearing, its duplicate, a motion for modification of child support, and the appeal of the RFA order), arguing that each of the motions failed to comply with the applicable rules, and alleging that the motions failed to raise substantive issues of law. Father filed a motion to modify PRR and PCC on March 5 that requested an emergency hearing, waiver of all filing fees, and an order of contempt against mother. He did not submit an application to waive the filing fee, and instead argued that he should be granted a waiver of the filing fees on the merits of his legal arguments. Also on March 5, father appealed the family division's decision to grant mother's motion for attorney's fees. The family division acknowledged receipt and directed father to submit a filing fee or file the correct form to waive the filing fee. The response included the forms and informed father that he needed to respond within a month or the motions would be dismissed. This time, the family division transmitted the notice of appeal to this Court. This Court acknowledged receipt of father's notice of appeal on March 5 and sent him a letter with the docket number and instructions under the Vermont Rules of Appellate Procedure for filing a docketing statement and ordering transcripts.

¶ 25. For the first time, father filed the proper application to waive filing fees and service costs on April 1, which the superior court clerk denied the next day because father's responses on the application indicated that he was ineligible for a waiver. The application informed father that he had the right to appeal the denial, but that his appeal must be filed within seven days of the order. Father filed an appeal from the denial of his filing fee waiver application on April 15, asserting that the costs were incorrect and that he had tried to contact the court multiple times, and requesting that he not be charged any fees until the family division corrected his child support guidelines, an issue unrelated to the filings he was appealing.

¶ 26.    This Court responded to father's appeal from both the waiver-of-fee decision and the attorney's-fees decision in an entry order on April 15, noting that father had failed to appeal the waiver-of-fee decision within the required seven days pursuant to Vermont Rule of Civil Procedure 3.1(d) and informing father that he needed to pay the filing fee by the end of April or his attorney's-fees appeal could be dismissed without further notice.  This Court dismissed the attorney's-fees appeal as untimely filed on April 19, noting that father failed to file his notice of appeal within thirty days of the family division's January 27, decision, pursuant to Vermont Rule of Appellate Procedure 4(a)(1).  The Court further acknowledged that father did not need to pay the filing fee because the appeal was dismissed.

¶ 27.    While the above appeals were ongoing, the family division on March 8, 2021, issued an entry order asking mother to respond within ten days to father's motions.  In response, mother filed a motion for sanctions on March 16.

¶ 28.    In her motion, mother emphasized father's "record of noncompliance and disobedience" with supervised visitation; his violations of the RFA order and subsequent arrests; and his numerous motions alleging facts against mother that the trial court had already found to be false.  She characterized father's actions as "mak[ing] harassing and baseless representations to the court" that amounted to vexatious litigation and argued that he was continuously stalking her using the court system.  Mother also argued that father repeatedly failed to conform his pleadings to the Vermont Rules of Civil Procedure, in particular Rules 5 and 11(a).  Finally, mother asked the court to impose Rule 11 sanctions against father to deter what she characterized as harassment of her and abuse of the judicial process.

¶ 29.    Mother did not note specific motions or filings that she wanted father to correct or withdraw in either her attorney's communications with father or her motion for sanctions, but she noted that father filed four documents in ten days and asserted that almost all of the motions father had filed over the several months leading up to March 2021 did not contain legal or factual support.

Mother had provided father with a draft of the sanctions motion and a certificate of service in February, but father did not correct any filings, withdraw any motions, or otherwise respond within the required twenty-one days.

¶ 30.   Father filed a response to mother's motion for sanctions on March 26 that solely disputed mother's factual claims.  Later that day, the family division issued an entry order that noted this failure to respond to mother's substantive legal arguments, and it directed father to respond within fourteen days in a written filing five pages or fewer and containing his legal arguments against the sanctions.  Father responded on April 2 with a five-page motion that did not address the sanctions motion, instead repeating his factual allegations from his prior motions seeking modification of PRR, a contempt order, and modification of child support, and making policy arguments about parental involvement in their child's life, the COVID-19 pandemic, and child mental health.

¶ 31.   On April 20, the family division granted mother's request for sanctions. Specifically, it enjoined father "from filing any further pleadings in this case unless signed by an attorney licensed to practice law in the State of Vermont or without first obtaining permission from this Court."  Despite this order, father filed two additional motions for contempt against mother on April 21 and May 6, alleging that she did not facilitate biweekly video calls between father and daughter.  Father also filed an appeal to this Court from the April 2021 sanction order.  It is this appeal that is before us now.[3]

## II.  Analysis

¶ 32.   On appeal, father argues that the family division is biased against him and has continually violated his constitutional rights.  Father's three-page brief does not cite to any legal authority other than the U.S. Constitution, and his arguments are difficult to discern.  Although he

---

[3] The family division recently made additional rulings addressing the sanction.  The parties have not argued that the family division's rulings affect this appeal.  The order is not a part of the record of this appeal.  V.R.A.P. 10.

12

appears to challenge prior orders of the family division throughout this case, the only appeal that is properly before us is from the April 2021 sanctions order. Accordingly, we limit our review to that order.

¶ 33. We review an order imposing sanctions under Rule 11 for abuse of discretion. State v. Delaney, 157 Vt. 247, 256, 598 A.2d 138, 143 (1991) ("Absent an abuse of discretion, we will not reverse a trial court's determination of a Rule 11 motion."); see also Zorn v. Smith, 2011 VT 10, ¶ 13, 189 Vt. 219, 19 A.3d 112. We will "uphold the trial court's factual findings absent clear error." State v. Brooks, 2013 VT 27, ¶ 9, 193 Vt. 461, 70 A.3d 1014 (quotation omitted).

¶ 34. Rule 11(b) governs representations to the court, and provides that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other document, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

V.R.C.P. 11(b). Rule 11(c) governs the imposition of sanctions for violations of Rule 11(b), stating, "[i]f, after notice and a reasonable opportunity to respond, the court determines that [Rule 11(b)] has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." V.R.C.P. 11(c). A sanction under Rule 11(c) must "be limited

to what is sufficient to deter repetition of such conduct" and "may consist of, or include, directives of a nonmonetary nature." V.R.C.P. 11(c)(2).

¶ 35. In Zorn, this Court considered whether a prefiling injunction against a litigant is an appropriate sanction under Rule 11. 2011 VT 10. We employed the analysis used by the United States Court of Appeals for the Second Circuit, which included the following five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Id. ¶ 18 (quoting Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986)). These factors attempt to strike a balance between a litigant's right to court access and the need to protect the court and other parties from wasting resources. Id. As we indicated in Zorn, "[t]he ultimate question is 'whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.' " Id. (quoting Safir, 792 F.2d at 24). This appeal requires us to consider two issues: whether the family division acted within its discretion in imposing a prefiling injunction and whether the imposed injunction is sufficiently precise.

### a. Discretion to Impose Sanctions

¶ 36. We conclude that the family division acted within its discretion in imposing a prefiling injunction in this case. On appeal, father does not challenge any of the court's findings other than its determination that his filings were made in bad faith, which he seems to contest by listing a summation of facts that he asserts justifies his behavior. However, the family division, as the trial court in this matter, "is in the best position to determine the credibility of the evidence and witnesses before it and to then weigh that evidence." State v. Huston, 2020 VT 46, ¶ 10, 212 Vt. 363, 236 A.3d 1291. Where, as here, there is conflicting testimony and factual allegations, the

14

trial court " 'has the exclusive right to resolve' " the conflict and make factual findings. Id. (quoting Potwin v. Tucker, 126 Vt. 414, 418, 234 A.2d 430, 433 (1967)).

¶ 37. As to the first Safir factor, the evidence supports the family division's finding that father's history of litigation in this matter involved filing vexatious, harassing, and duplicative motions with no good-faith motive and no support in fact or law. It further found, and noted that father had admitted, that father was engaging in an escalating pattern of vexatious litigation and abusive behavior. The family division had previously found that father's behavior had worsened over time, and that he had "routinely and with increasing frequency and virulence, violated the orders of this court and behaved in an erratic and abusive manner to those around him." In addition to violating the RFA order, father had made "derisive, inflammatory, and abusive comments" to opposing counsel and court staff and had "filed numerous ill-conceived motions without following the proper procedure and/or without substantial basis in law or fact."

¶ 38. Regarding the second factor, the record supports the family division's findings that father appeared to be motivated by the improper purpose of harassing mother and needlessly increasing the cost of litigation. The vast majority of his legal claims had no basis in existing law, and the family division repeatedly found that his factual assertions, allegations, and denials of mother's factual claims did not have evidentiary support. This lack of evidentiary basis for his claims indicates a lack of good faith, as do his continued illegitimate assertions that are intended to embarrass and harass mother.

¶ 39. Turning to the third factor, the family division acknowledged that father represented himself throughout the proceedings, but, as acknowledged in Zorn, emphasized father's obligation to comply with the procedural rules. 2011 VT 10, ¶ 22. Although pro se litigants "receive some leeway from the courts, they are still 'bound by the ordinary rules of civil procedure.' " Id. ¶ 22. The record reflects that father repeatedly chose not to comply with relevant rules even after the judge or court staff instructed father on how to comply.

15

¶ 40. In consideration of the fourth factor, the court further noted that father's filings burdened mother financially, and needlessly expended valuable court time and burdened the court and court staff. Moreover, father's behavior had already resulted in the court awarding mother attorney's fees against father.

¶ 41. Moving on to the fifth and final factor, the court determined that requiring an attorney to sign father's pleadings would prevent duplicative filings and filings not based in fact or law, and that requiring father to seek permission to file would reduce the burden on mother by providing a filter. Filtering father's impulses through an attorney's professional obligations or the court's discretion to refuse improper and harassing filings is an appropriate and adequate measure to protect both mother and the court from the burdens of responding to and adjudicating vexatious litigation. Because father repeatedly violated Rule 11(b), met the majority of the Zorn factors, and showed no indication of ceasing his harassment, the family division did not abuse its discretion in concluding that a prefiling sanction under Rule 11(c) was warranted.

¶ 42. The next question is whether the injunction in this case was specific enough as to procedure to ensure father's continued access to the court system.

b. Precision of Sanctions

¶ 43. Although a prefiling injunction is warranted under the facts of this case, it must be imposed with caution so as not to unduly restrict an unrepresented party from access to the court. See Zorn, 2011 VT 10, ¶ 23. The sanction imposed in this case is distinguishable from the overly broad one imposed in Zorn, which similarly involved a pattern of vexatious filings by a pro se litigant.

¶ 44. The plaintiff in Zorn was initially represented by counsel when he sued the defendant for legal malpractice. The court granted summary judgment and an award of around $26,000 on his malpractice claim. Over the next several years, the defendant failed to pay, and the plaintiff obtained a writ of execution on the judgment. By the time the defendant paid his first

16

$50 towards the balance, it had risen to roughly $43,500, including interest. The plaintiff filed a pro se motion for criminal contempt, but the court denied it and explained that civil contempt was the only avenue available. The plaintiff then filed a series of "largely incomprehensible" motions, including another motion for contempt, a motion for renewal of judgment, and an amended complaint that named the trial judge as a defendant, all of which the court denied. Id. ¶ 5. The plaintiff also filed papers with the superior court alleging that the court had engaged in "unconstitutional, conspiratorial, and treasonous" actions and indicating that he had made complaints to the Federal Bureau of Investigation and Internal Revenue Service related to the court's denial of his motions. Id. ¶ 6. Over an additional several years, the plaintiff continued to file motions and appeals that were denied for lack of legal and evidentiary support. Id. ¶¶ 6-9.

¶ 45.    Ultimately, the court directed the plaintiff to show cause why he should not be sanctioned for filing five motions that lacked legal and evidentiary support. The plaintiff did not address the court's order in his response, instead submitting a lengthy filing that accused the defendant and the court of conspiring against him. As a result, the court sanctioned the plaintiff for violating Rule 11(b)(2)-(3) and directed the court clerk to refuse to accept any future pleadings from the plaintiff unless they were signed by an attorney. The plaintiff appealed the sanctions.

¶ 46.    This Court affirmed the trial court's decision as within its discretion but modified the sanctions order regarding two issues. Id. ¶ 13. We limited the sanction to the underlying case between the plaintiff and the defendant and modified the order to allow the plaintiff to demonstrate that he did not have the resources necessary to hire an attorney to represent him further in the matter. Id. In upholding the sanction order, we noted that the trial court had "identified five filings that plainly violated Rule 11" and "were repetitive and unsupported by fact or law." Id. ¶ 15. Although "[t]he right of access to justice is fundamental in our state constitution," the "right is not unlimited." Id. ¶ 16. "[L]itigants are not free to abuse the courts by inundating them with frivolous suits which burden the administration of the courts for no useful purpose." Id.

17

¶ 47.    Here, father has the option of either having a licensed attorney sign his filings or obtaining permission from the family division before filing further pleadings in this case. Whereas the sanction in Zorn was overbroad because it appeared to apply to any proceeding involving the plaintiff and potentially prevented the plaintiff from filing meritorious pleadings due to his inability to pay for a lawyer, these considerations have already been addressed in the sanctions order before us. The order is limited to the present case, and father is still permitted to file motions pro se provided he first obtains permission from the family division. The present sanctions order is therefore less onerous than the sanction in Zorn.

¶ 48.    Nonetheless, the family division's order in this case was unclear because it did not inform father of an appropriate procedure to follow for requesting court permission to file future pleadings. We therefore conclude that the order requires further clarification. The family division should articulate a procedure for father to follow, such as filing a separate document along with each future motion that asks for permission and states the relevant facts, law, and motivation for the motion. Father has demonstrated difficulty with understanding court procedure and appropriate conduct, but it is vital that the court provides clarity as to the methods by which he can revise and resubmit his filings in the event there is a legitimate reason for his pleadings.

¶ 49.    If father continues to submit non-permitted filings without following the court's established procedure for asking permission, the family division need not consider the merits of the pleading but must inform father that his filing is refused by issuing an appropriate order indicating that it will not be acted upon. Further, the family division must include the non-permitted filings in the record to facilitate this Court's review of whether the family division appropriately denied permission for a particular pleading if an appeal is taken. Additionally, the family division must allow father to respond to motions filed by mother and to appeal decisions by the family division without first obtaining permission from the court unless it is required by rule. Because we determine that father's responses to mother's motions are outside of the scope

18

of the sanction, the family division must consider father's responses; it may not refuse to consider their merits the way it may do so if father improperly initiates future motions.

### III. Conclusion

¶ 50.     For these reasons, we affirm the imposition of sanctions and remand this matter to the family division for it to tailor the sanctions order to outline the appropriate procedure and standard for father's future filings with the court.

Affirmed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice